## SUSAN H. LEACH v. ROBERT T. LEACH.

1. DIVORCE — *Gross Neglect of Duty.* Where a wife has refused for more than five years to cohabit with her husband as a wife, and has neglected and refused for the same period of time to perform many of her household duties, *held*, that such conduct is sufficient to authorize the granting of a divorce to the husband upon the ground of "gross neglect of duty," within the meaning of the statutes. (Civil Code, § 639.)

2. DEPOSITIONS, *Not Suppressed — No Error.* Where a notice to take depositions was that they would be taken at Detroit, Mich., on February 21, 1890, and from day to day until the taking of the same should be completed, and two were taken on that day and one remained to be taken, and the officer before whom the depositions were being taken adjourned the taking of the same to Monday, February 24, for the reason that the next day, Saturday, was Washington's birthday, and a legal holiday in Michigan, and that the next day thereafter was Sunday, and on account of the illness of the witness whose deposition was to be taken ; and where a motion was afterward made in the court to suppress these depositions because of such adjournment, and the court overruled the motion: *Held*, Not error.

3. EVIDENCE, *No Error in Admitting.* Certain evidence commented on, and *held*, that no material error was committed in admitting it.

4. ALIMONY — *Query as to Amount.* The marriage took place on March 14, 1872. The husband at the time had money and property worth about $15,000. The wife had nothing. On March 22, 1890, a divorce was granted to the husband for the fault of the wife, and at that time the husband's property was worth from $10,000 to $14,000. He was owing debts to the amount of $500 or more; was made liable for and required to pay the whole amount of all the costs of the divorce action, which amount was very large, and was required to support all the children, five in number and all minors, and required to pay his wife, as alimony, the sum of $2,500 and to surrender to her a large number of articles of personal property, the value of which is not shown. *Held*, Under all the circumstances of the case, that the supreme court cannot say that the trial court erred in not granting a larger amount of alimony.

5. CUSTODY OF CHILDREN, *Awarded to Plaintiff — Query.* In a case of divorce, where the trial court finds upon sufficient evidence "that the defendant is not a proper person to be entrusted with the custody and management of the said minor children, [and] the court further finds that the plaintiff is a proper person to be entrusted with the custody, management and maintenance of said children,"

*held*, that the supreme court cannot say that the trial court erred in awarding the custody, management and maintenance of such children to the plaintiff.

*Error from Sedgwick District Court.*

THE facts are substantially stated in the opinion.

*Sankey, Campbell & Amidon,* for plaintiff in error.
*Sluss & Stanley,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action for divorce, and for the custody of the children, five in number, and all minors, brought in the district court of Sedgwick county on September 5, 1889, by Robert T. Leach against his wife, Susan H. Leach, charging her with gross neglect of duty in refusing to cohabit with him as his wife, and in refusing to perform the household duties of a wife for more than five years. The defendant filed an answer and cross-petition, charging the plaintiff with gross neglect of duty, and cruelty, and asking for a divorce and the custody of the children, and for alimony. The case was tried from March 1 to 22, 1890, before the court without a jury, and the court found generally in favor of the plaintiff and against the defendant, and also found specially as follows:

"The court further finds that the defendant has been guilty of gross neglect of duty as charged in the petition. The court further finds that the defendant is not a proper person to be entrusted with the custody and management of the said minor children. The court further finds that the plaintiff is a proper person to be entrusted with the custody, management and maintenance of the said children. The court further finds that the defendant is entitled to alimony in the sum of $2,500."

Upon these findings, general and special, the court granted the plaintiff the divorce prayed for in his petition and the custody of the children, and granted to the defendant, as alimony, the sum of $2,500, and awarded to her a large number

of articles of personal property, and adjudged that the plaintiff should pay all the costs of the suit; and the defendant, as plaintiff in error, brings the case to this court, making the plaintiff below the defendant in error.

There was ample evidence to support the findings and judgment of the court below. According to the plaintiff's evidence, the defendant had refused to cohabit with him as his wife for more than five years before the commencement of this action, and she admitted that she had so refused for a year and a half or more; and the plaintiff's evidence also showed that she had neglected and refused to perform various other duties as a wife for an equally great period of time. Such conduct, we think, is sufficient to authorize the granting of a divorce to the aggrieved party upon the ground of "gross neglect of duty," within the meaning of the statutes. (Civil Code, § 639.) Indeed, we think, the refusal of the defendant to cohabit with the plaintiff as his wife for more than five years, as he alleged in his petition, and as was shown on the trial, was sufficient. Probably a much shorter period of time would be sufficient; but whether it would or not, it is not necessary now to express any opinion.

1. Divorce — gross neglect of duty.

Errors, however, are alleged as occurring during the trial as follows: It is claimed that the court below erred in overruling the defendant's motion to suppress depositions. It is claimed that the notice to take the depositions specified that the depositions would be taken at Detroit, Mich., on Friday, February 21, 1890, and from day to day until the taking of the same should be completed; but that the depositions were not so taken; that one of the depositions was taken on an adjournment from February 21 to 24, 1890. It appears that two of the depositions were taken on February 21, 1890, and that an adjournment was then had to February 24, 1890, when the remaining deposition, that of Mrs. Mary Elizabeth Joslin was taken. The defendant did not make any appearance at any time, and there is no pretense that the adjourn-

ment caused her any inconvenience. With regard to the adjournment, the officer before whom the depositions were taken certifies as follows:

"Thereupon I adjourned the taking of said depositions to Monday, February 24, 1890, between the hours of 8 o'clock A. M. to 6 o'clock P. M.; Saturday, February 22, 1890, being a legal holiday (Washington's birthday), and February 23, 1890, being Sunday. Said adjournment was taken on account of the illness of Mary Elizabeth Joslin, a witness produced by said plaintiff. Thereupon, on Monday, February 24, 1890, the said plaintiff produced said witness Mary Elizabeth Joslin, who testified as follows, to wit."

Now, Washington's birthday is everywhere in the United States considered in the nature of a holiday, and it is in fact under the statutes of Michigan a legal holiday. (Howell's Annot. Stat. of Mich., 1882, § 1591.) And Sunday is certainly not a day for the taking of depositions. And the witness Mrs. Joslin was ill. We think the court 2. Depositions, not suppressed — no error. below did not err in refusing to suppress the depositions. Besides, the depositions taken on February 24, 1890, had but little materiality, and could not have materially affected any of the substantial rights of the defendant.

The plaintiff further complains that the court below erred in admitting "the testimony of the witnesses Mrs. York, Mrs. Buck, and Mrs. Wheaton, as to the declarations and conduct of Mrs. Leach from 7 to 12 years prior to this action, about raising children," etc. The object of this testimony was to show the hatred and ill-feelings entertained by Mrs. Leach toward her husband, the plaintiff, and as tending to corroborate his testimony that she had refused to cohabit with him as his wife for a very long period of time. We 3. Evidence, no error in admitting. think the evidence was competent. The plaintiff alleged in his petition that the defendant's gross neglect of duty commenced *more* than five years before he commenced his action, and she, in her answer and cross-petition in denial and asking for affirmative relief, alleged "*that ever since her marriage with the plaintiff,* (which was on March

14, 1872,) she has conducted herself in all respects as an obedient, dutiful and affectionate wife, and conscientiously fulfilled all her marital duties."

The plaintiff in error also complains "of error in the admission of the evidence of Mrs. Reeves as to Mrs. Leach's desire to leave Kansas, etc.; also the evidence relating to her conduct shortly after the birth of her last child." Her last child was born on January 8, 1882. The first of the above complaints has no importance one way or the other; and the second shows that a few months after the birth of the defendant's last child she had a dance at her house, and danced herself. This was for the purpose of showing that her health was good. It was also shown that she danced on many other occasions. As before stated, the defendant's last child was born on January 8, 1882, and prior to that time and in the early part of 1881, when she first discovered that she was pregnant with that child, was the time when the principal troubles between the parties commenced, and from that time on they have had but very little, if any, sexual intercourse with each other.

We shall now consider the question of alimony, and probably the plaintiff in error, defendant below, considers this the most important question in the case. Both the parties asked for a divorce in their pleadings, and probably both desire that it should be granted; but each wants the bulk of the property. It appears that the plaintiff below, while still a single man, and in 1871, removed from Michigan to Kansas, and purchased a quarter-section of land in Sedgwick county. Afterward, he returned to Michigan, and there, on March 14, 1872, married the defendant, and immediately brought her to Kansas, and they arrived at his farm about April 2, 1872. At the time of his marriage he owned a quarter-section of land in Sedgwick county, had $1,400 in money, and had debts coming to him, secured by mortgage, from which he realized about $12,500. She had nothing. At the time of the divorce he owned two quarter-sections of land in Sedgwick county, had some personal property, worth perhaps $1,500, had no

money of any consequence, was owing debts to the amount of $500 or more, was made liable for and required to pay all the costs in this present action, which will be a very large amount, and is required to support all his children, five in number, and required to pay to the defendant the sum of $2,500 as alimony, and to surrender to her a large number of articles of personal property, the value of which is not shown.   At the time of the plaintiff's marriage he was probably worth about $15,000; at the time of the divorce he was not worth that amount.   The counsel for the plaintiff in error, defendant below, state the amount to be $14,000, but probably it was not more than $10,000 to $12,000; and even that amount is made up largely from the increased value of his real estate, caused by the settlement and the growth in population and in wealth of the country.   The defendant's case is not like the case of that class of wives who bring something to their husbands, or who after marriage assist their husbands in accumulating wealth or property, for she brought nothing to her husband, and afterwards largely retarded and hindered him from accumulating wealth and property, and was largely the cause of reducing his wealth.   Ordinarily, $2,500 or $3,000 alimony, out of an estate worth from $10,000 to $14,000, would be too small, yet in this case it is probably right.   At most, we cannot say that the court below erred in not granting a larger amount of alimony.

4. Alimony—
query as to
amount.

As to the custody of the children, the district court had better means of knowing what was right than we have, and we cannot say that the court erred in awarding the custody of all of them to the plaintiff.   The youngest child is a boy, and, as before stated, was born on January 8, 1882.   Whether, however, the plaintiff shall continue to have the custody of the children, or whether the defendant may at some future time have their custody, or the custody of some of them, is a question that will remain open, and may at any time be further considered and adjudicated by the courts.   Circumstances may change, and it may at some time be for the best interests of the chil-

5. Custody of
children,
awarded to
plaintiff—
query.

dren, or some of them, that the defendant shall have their custody, and the court may then award them to her. But at the present, all that this court can do will be to affirm the ruling of the district court upon this subject. It can make no difference that one of the quarter-sections of land was the homestead of the parties. It was decided some years ago, in the case of *Brandon v. Brandon*, 14 Kas. 342, 346, that the homestead of the husband and wife "is the homestead of each, and upon a divorce the court has power to assign it to either."

We cannot say that any substantial error has been committed in this case, and therefore the judgment of the court below will be affirmed.

All the Justices concurring.