No. 20,259.

WILLIAM DANIELSON, *Appellant,* V. BETTIE DANIELSON, *Appellee.*

### SYLLABUS BY THE COURT.

DIVORCE REFUSED—*Property Divided—Judgment Affirmed.* The evidence considered, and held that the judgment refusing a divorce and making a division of property will not be disturbed.

Appeal from Cloud district court; JOHN C. HOGIN, judge. Opinion filed December 9, 1916. Affirmed.

*Park B. Pulsifer,* and *Charles L. Hunt,* both of Concordia, for the appellant.

*F. W. Sturges,* and *Fred W. Sturges, jr.,* both of Concordia, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one for divorce. Divorce was denied, but a division of property was made. The plaintiff appeals.

The court has experienced considerable difficulty in reaching a conclusion respecting the propriety of the action of the district court in denying the plaintiff a divorce. The evidence will not be discussed in detail. That in favor of the plaintiff established grounds for divorce recognized by the law of this state. With the policy of the law the courts have nothing to do. The defense was not very vigorous. It consisted chiefly of half denials, explanations, palliations, and weak counter-charges. The plaintiff separated from the defendant and went to the city of Clyde, where he engaged in business. There can be no doubt that two letters written by the defendant to her husband after she found their matrimonial ship on the rocks, came from her heart and represented her true self. They admitted fault, expressed sorrow and begged pardon for ugly words, pleaded that she was but human clay, told of the emptiness of her home and her life, implored forgiveness, and expressed a longing desire for his return. The distressed wife's yearning cry for her husband to come home is, indeed, a moving thing. But there is sufficient in the record to indicate

Danielson v. Danielson.

that had he returned it would not have been long until his wife's unfortunate disposition would have reasserted itself, and the same infelicitous condition of affairs, which had grown worse in later years, would have again confronted them. Perhaps the defendant is helpless against her own unhappy temperament, and the cause may be largely pathological. It may be that the plaintiff feels, deep down in his inner consciousness, that his wife really loves him, and it may be he was more wearied and exasperated than wounded by her conduct. For a long time, at least, it was borne with much serenity. There are no findings of fact, and this court can do little more than speculate with reference to what determined the judgment. The evidence was chiefly oral. The court saw and heard the parties themselves, and applying the rules of appellate procedure, which are sound in principle and wholesome in result, this court is unable to say that the judgment is wholly without substantial foundation.

The division of property is quite as unsatisfactory as the order refusing a divorce. The defendant was charged, until further order, with the maintenance of the two children of the marriage, Ethel and Reynold, who were respectively thirteen and ten years old at the time of the trial in April, 1915. The property divided was contributed and accumulated by both parties. It consists of a farm of 160 acres, a farm of 80 acres, a residence in Concordia, an interest in a clothing store in the city of Clyde, notes to the amount of $575, household goods and an automobile. The two farms are covered by a mortgage for $2500, and the plaintiff owes personal debts to the amount of $1370. The residence in Concordia was valued at $3000 and was given to the defendant. The plaintiff's interest in the store at Clyde was valued at $4000, and was awarded to him. The household goods were given to the defendant and the automobile to the plaintiff, without valuation. The farm of 160 acres was given to the defendant, charged with $1300 of the mortgage, and the farm of eighty acres was given to the plaintiff, charged with the remainder of the mortgage. The plaintiff produced a real-estate agent as a witness who valued the larger farm at from $13,500 to $13,700, and the smaller farm at from $6500 to $6800. Another witness for the plaintiff valued the larger farm at $13,500 and the smaller farm at

$6750. The defendant's brother and another witness in her behalf valued the larger farm at $15,000 and the smaller farm at $5000. In the briefs each side recommends to this court the evidence of the other side. The plaintiff testified that the 240 acres of land were worth from $70 to $80 per acre. He was not asked to value the farms separately.

Taking the figures most favorable to the defendant, the net share apportioned to each party was as follows:

The defendant received:

| | |
|---|---|
| Residence | $3,000 |
| Farm | 13,500 |
| Total | $16,500 |
| Less mortgage | 1,300 |
| Net value | $15,200 |

The plaintiff received:

| | | |
|---|---|---|
| Clothing-store interest | | $4,000 |
| Farm | | 6,800 |
| Notes | | 575 |
| Total | | $11,375 |
| Less: Mortgage | $1,200 | |
| Debts | 1,370 | |
| | | 2,570 |
| Net value | | $8,805 |

On the evidence for the defendant, the account stands as follows:

The defendant received:

| | |
|---|---|
| Residence | $3,000 |
| Farm | 15,000 |
| Total | $18,000 |
| Less mortgage | 1,300 |
| Net value | $16,700 |

The plaintiff received:

| | | |
|---|---|---|
| Clothing-store interest | | $4,000 |
| Farm | | 5,000 |
| Notes | | 575 |
| Total | | $9,575 |
| Less: Mortgage | $1,200 | |
| Debts | 1,370 | |
| | | 2,570 |
| Net value | | $7,005 |

Danielson v. Danielson.

The plaintiff testified that the land is worth from $70 to $80 per acre.  If the farms are of equal value, and are worth $75 per acre, the account stands as follows:

The defendant received:

| | |
|---|---|
| Residence ................................ | $3,000 |
| Farm .................................... | 12,000 |
| | |
| Total .................................. | $15,000 |
| Less mortgage ........................... | 1,300 |
| | |
| Net value ............................... | $13,700 |

The plaintiff received:

| | | |
|---|---|---|
| Clothing-store interest .................. | | $4,000 |
| Farm ................................... | | 6,000 |
| Notes .................................. | | 575 |
| | | |
| Total ................................. | | $10,575. |
| Less: Mortgage ..................... | $1,200 | |
| Debts ......................... | 1,370 | |
| | | 2,570 |
| | | |
| Net value ............................ | | $8,005 |

Averaging these results, the defendant received more than $15,000 and the plaintiff less than $8000.  What values the court deemed to be established by the evidence can not be known.

Years ago the defendant received from her relatives eighty acres of land.  Afterwards half of the tract was sold for $900, and still later the remainder was sold for $2850.  The funds derived from these sales were used and invested as common assets of the husband and wife.  In the year 1909 the residence in Concordia was purchased for $2800 and title was taken in the wife's name.

The plaintiff's net income from his clothing store in Clyde was not shown, and the average net income from the two farms was not shown.  The plaintiff's physician testified as follows:

"Have treated Mrs. Danielson professionally.  I saw her this morning. She did not sleep any last night, and was extremely nervous.  I treated her in the latter part of 1913.  She was extremely nervous.  That might be inherited, or it might be brought on from other causes.  The majority of women after childbirth are nervous.  She had some inflammation of the right ovary, and was lacerated some.  She probably took treatments off and on for about six weeks.  I have seen her occasionally since then. I think I treated her in February, 1915.  Have probably seen her a dozen times within the last eight months or a year.  In 1913 she was suffering from neurasthenia.  I found her in the condition the majority of women

15—99 Kan.

are who have borne children. Her condition was no worse than the ordinary woman of that age. She improved under treatment. There was no more the matter with her mind than you would find in any neurasthenic patient."

The maintenance of the two children will be a financial burden on the defendant, but they can not be regarded as unqualified liabilities. The order respecting their maintenance may be changed at any time. The plaintiff carries life insurance for their benefit to the amount of $2500. The court's purpose, at the conclusion of the trial, was to give the defendant a life estate in the larger farm, with the remainder in fee to the two children. Discovering that this could not be done, judgment was rendered as indicated, but the defendant immediately deeded the farm awarded her to the children, reserving a life estate to herself.

The statute reads as follows:

"When the parties appear to be in equal wrong, the court may in its discretion refuse to grant a divorce, and in any such case or in any other case where a divorce is refused, the court may for good cause shown make such order as may be proper for the custody, maintenance and education of the children, and for the control and equitable division and disposition of the property of the parties, or either of them, as may be proper, equitable and just, having due regard to the time and manner of acquiring such property, whether the title thereto be in either or both said parties, and in such case the order of the court shall vest in the parties a fee-simple title to the property so set apart or decreed to them, and each party shall have the right to convey, devise and dispose of the same without the consent of the other." (Civ. Code, § 668.)

A division of property under a statute of this character depends on the peculiar circumstances of the case. Some of the things to be considered, in addition to those specified in the statute, are the age, health, earning capacity, and future prospects of each party. The question here is not simply whether or not the district court was too liberal in its allowance to the defendant, but whether or not the division was so manifestly inequitable and unjust that this court should interfere. All the facts considered, the court concludes to let the division of property stand.

The judgment of the district court is affirmed.