Putnam v. Putnam.

---

No. 21,802.

IDA M. PUTNAM, *Appellee,* v. C. E. PUTNAM, *Appellant.*

SYLLABUS BY THE COURT.

1. DIVORCE AND ALIMONY—*Divorce Refused—Division of Property—Statute Constitutional.* The provisions of section 7576 of the General Statutes of 1915 (Gen. Stat. 1868, ch. 80, § 643, as amended), which authorize the court in a divorce case, for good cause shown, to make a proper and equitable division of the property acquired through the joint efforts of a husband and wife, although the divorce itself is denied, are constitutional and valid; and in the making of such equitable division, it is not of necessarily controlling significance that such property, when acquired, was taken and held in the name of the husband.

2. SAME—Where the marital relations of a husband and wife are so discordant and unhappy as to give apparent justification for an action for divorce, the trial court has judicial power in such action to make an

equitable division of the property acquired by them during their marriage, although neither party has so grossly offended the marriage obligations as to require the court to grant an absolute divorce.

3. SAME—*Statute Construed.* Article 28 of chapter 93 of the General Statutes of 1915 (Civ. Code, § 663 *et seq.*), relating to divorce and alimony, covers germane and pertinent matters which may be properly determined in a divorce action, although the divorce itself is denied.

4. SAME—*Evidence Supports Judgment.* Record examined, and the evidence held sufficient to support the judgment.

5. SAME—*Property Equitably Divided.* The division of property examined, and no injustice discerned therein; and the rule followed that, where no manifest injustice appears, the division of property decreed by the trial court cannot be disturbed.

6. SAME—*When Findings and Judgment are Conclusive.* Rule followed that where there is ample evidence to support the findings and judgment, the evidence to the contrary has little significance in an appellate court.

7. SAME—*Award of Money to Wife—Not Error.* In making an equitable division of property between a husband and wife, in a divorce action, where no prejudice to defendant is shown, it was not error to award the wife a sum of money to be paid in installments.

Appeal from Douglas district court; CHARLES A. SMART, judge. Opinion filed January 11, 1919. Affirmed.

*W. B. Pleasant,* of Ottawa, for the appellant.

*F. M. Harris,* of Ottawa, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This appeal relates to questions arising in a divorce action, where the divorce is denied, but a division of property is granted.

The plaintiff, Ida M. Putnam, and the defendant, C. E. Putnam, were married in Anderson county, Kansas, in 1882. All their married life of thirty-five years or more was spent in this state, mostly in Franklin county. The defendant husband had about $700 worth of property at the time of the marriage. They have reared a family of six children, all grown to maturity except the youngest, a lad of fifteen years. They were successful in the accumulation of property. Their farming lands, city property, and miscellaneous chattels were valued by the trial court at $176,000. The title to this property

stood mostly in the name of the defendant, but when domestic discord had become chronic in this family the defendant instituted a practice of taking title to real property in the name of his sister, and also taking deeds to other realty with the name of the grantee omitted.

The domestic troubles of plaintiff and defendant were of long standing. The evidence tends to show that these were occasioned in part by the husband's restraint upon the wife's household and family expenses, and by his curious and antiquated notions about the husband's "mastery of his own household," which prompted him to withhold from his wife all information about his business affairs, and by his incessant hectoring of his wife about her religious opinions. Although he was ostensibly an orthodox churchman, his children testified that for many years their home on Sunday was a bedlam of religious controversy, usually precipitated by defendant, and terminated by plaintiff in a woman's last refuge—her tears. The trial court found that this religious controversy wrecked this home.

Without the knowledge of his wife, defendant made one donation of $20,000 to a church board, and a later donation of $6,500. These gifts were made at times when defendant was imposing upon his wife such a rigid and unnecessary economy of domestic expenditures that it amounted to "inexcusable and intolerable stinginess," according to her somewhat justified viewpoint.

Shortly before this action was begun, and immediately after defendant was informed by his son, a college professor in a St. Louis university, that unless some adequate provision was made for his mother, their domestic difficulties would inevitably provoke litigation, the defendant went to Chicago and called upon a religious organization, a Bible institute, in that city; and, although that institute had no previous acquaintance or dealings with defendant, he executed to it a promissory judgment note for $100,000 and made arrangements for the disposition of all, or nearly all, of his property for the purpose of satisfying that note. When this action was tried, some substantial payment had been made on this note, and the name of the institute or its chief officer had been inserted in some of the deeds to properties where the name of the grantee

had been left blank when acquired by defendant, and thereafter such deeds were recorded.   One aggravated instance of this sort related to the title and deed to the family homestead.

The trial court's findings of fact are too elaborate for reproduction in full.   Some of them read:

"During all the years of their married life, the defendant has been a careful, shrewd, honest, energetic business man, highly respected by all with whom he came in contact, and has, with the coöperation and assistance of his wife, accumulated a large amount of property, . . .

"During all the years of their married life, the plaintiff has been a true, upright, dutiful wife and faithful mother.   She has had little or no opportunity to mingle with the outside world, or give attention to matters outside her home.   These two people have reared a family of six children, as above stated, all of whom are upright, honorable, intelligent and highly respected.

"I do not find that the conduct of the plaintiff during the years of her married life is open to criticism.   She commenced this action in good faith, firmly believing, as I take it from the testimony, that she had a right to a divorce, and with some grounds, at least, upon which to base that belief.

"While the defendant is by no means free from fault in his conduct toward his wife, especially for the last eighteen or twenty years, I do not find from the evidence that he has been guilty of extreme cruelty toward her in the legal sense of that term.   That is, such extreme cruelty as would warrant the granting of a divorce.

"In making these transfers [of real estate] and executing this note [for $100,000 to the Bible institute], one, at least, of the defendant's purposes was to prevent his wife from getting the possession and control of any portion of the property lest it might be wasted by her or expended, at least in part, in the support of the Christian Science doctrine.   I do not find that he intended to deprive his wife of support, but I do find that he desired to control that support; keep the matter of his property within his own hands and prevent his wife from handling any substantial amount of money."

The trial court denied the divorce, but divided the property in two parts of approximately equal value, $81,050 to plaintiff, and $81,200 to defendant.

Defendant appeals, his chief point being one of constitutional law.   This, and the other matters urged, will be noted in order.

Section 643 of chapter 80 of the General Statutes of 1868, article XXVIII, subject "Divorce and alimony," reads:

"When the parties appear to be in equal wrong, the court may, in its discretion, refuse to grant a divorce; but in any such case, or in any

other case where a divorce is refused, the court may, for good cause shown, make such order as may be proper for the custody, maintenance and education of the children, or the control and disposition of the property of the parties as may be proper."

Under the revised civil code, section 668 (Gen. Stat. 1915, § 7576), this provision, as amended, reads:

"When the parties appear to be in equal wrong, the court may in its discretion refuse to grant a divorce, and in any such case or in any other case where a divorce is refused, the court may for good cause shown make such order as may be proper for the custody, maintenance and education of the children, and for the control and equitable division and disposition of the property of the parties, or of either of them, as may be proper, equitable and just, having due regard to the time and manner of acquiring such property, whether the title thereto be in either or both of said parties, and in such case the order of the court shall vest in the parties a fee-simple title to the property so set apart or decreed to them, and each party shall have the right to convey, devise and dispose of the same without the consent of the other."

It was pursuant to these provisions of law that the trial court divided the property between plaintiff and defendant. Defendant contends that so much of the statute as authorizes a division of the property where a divorce is refused, is a taking of defendant's property and conferring it upon plaintiff without due process of law, in violation of the fourteenth amendment to the federal constitution, and in violation of section 18 of the Kansas bill of rights. Defendant grounds his argument on the theory that all this accumulation of lands and houses and barns and horses and cattle and farming machinery, etc., which he has acquired in thirty-five years with the coöperation and assistance of his wife is *his* exclusively, not hers in any sense, and therefore that the statute quoted above, as applied to this case, violates his constitutional right to take, hold and dispose of *his* property unrestrained and according to his own pleasure, so long as he has not been found guilty of wrong justifying an absolute divorce from the plaintiff. In other words, defendant's idea is that the case is to be viewed as if it were based upon a statute which authorized a judicial decree transferring John Doe's property to Richard Roe, without debt, obligation, or any consideration whatsoever.

Let us see if this theory is in accord with the genius of Kansas law. Prior to and at the time of the adoption of the Kansas constitution, the general principles of the common law were in force in this state, so far as they were suitable to the wants and conditions of this commonwealth. (Stat. Kan. Ter., 1855, ch. 96; Kan. Stat., 1859, ch. 121; *Sattig v. Small,* 1 Kan. 170; *The State, ex rel., v. Akers,* 92 Kan. 169, 189, 140 Pac. 637; *Clark v. Allaman,* 71 Kan. 206, 215-222, syl. ¶¶ 1, 3, 80 Pac. 571.).

At that time, divorces of two principal kinds were known to the common law, although they had formerly been controlled by ecclesiastical courts or were granted by the legislature. These kinds of divorce were either absolute or limited— divorce *a vinculo matrimonii,* and divorce *a mensa et thoro.* (1 Cooley's Blackstone, 440-442; 3 Cooley's Blackstone, 94; 14 Cyc. 574, 576, 578; 9 R. C. L. 244, 245.)

The constitution recognized the existence of these general principles of divorce, when it provided—

"All power to grant divorces is vested in the district court, subject to regulation by law." (Const. art. 2, § 18.)

Pursuant to this constitutional provision, and to the statute of 1868 above quoted, the plaintiff and defendant contracted their marriage relationship. While marriage is hallowed by moral and religious concepts which go back to the beginning of Christian civilization, yet when modern courts are compelled to consider the marriage relationship with reference to the rights, duties and obligations of married persons towards each other, it is a civil contract. (Gen. Stat. 1868. ch, 61, § 1; Gen. Stat. 1915, § 6134.) Nothing remains in Kansas jurisprudence of the old notion that a married woman is subordinate to her husband; the term "coverture" is hardly known in the Kansas language; the wife is not under legal disabilities of any sort. She is the equal of her husband in the marriage relation, and may hold, own, and control property, and engage in business as freely as her husband.

(Const. art. 15, § 6; Gen. Stat. 1868, ch. 62; Gen. Stat. 1915, ch. 72.).

But a wife has certain rights and interests in property acquired by the husband during the existence of the marriage relation which, with the aid of the statute, the courts upon

proper occasion will recognize and protect. Without such statute, these rights of the wife would be imperfect and unenforceable, but they would morally exist nevertheless, and they only need such statute to give them legal vitality. It is not easy, and perhaps unnecessary, to delimit all these rights. Where the marriage relationship is harmonious, it is scarcely necessary to consider them. Ordinarily it requires either death or discord to mature them. The recognition of these rights and interests, however, runs through our whole body of law. The family homestead may not be alienated without the joint consent of husband and wife, and it is immaterial whether the title to the homestead is in the husband or in the wife. (Const. art. 15, § 9; Gen. Stat. 1868, ch. 38, § 1; Gen. Stat. 1915, § 4697.) The wife's signature and voluntary assent are necessary when the husband undertakes to sell or bargain and convey other realty than the homestead, because if he conveys it without her signature and assent, she becomes absolute owner of one-half of the property, a tenant in common with the husband's grantee, if she survives her husband. (Gen. Stat. 1915, § 3831; *Flanigan v. Waters,* 57 Kan. 18, 45 Pac. 56.) The husband cannot effectually dispose of more than half of his property, even by will, without the consent of his wife given either before or after his death. (Gen. Stat. 1915, § 11790.) Even the husband's personal property, if it be limited in amount—and this was characteristic of early-day Kansans, when our public policy was being shaped—cannot be mortgaged without the wife's consent. (Gen. Stat. 1915, §§ 6506, 4700.)

From these instances, by no means complete, it will be seen that in Kansas, from the adoption of the constitution until now, the whole tendency of our legislation has been to recognize that the wife has a clearly existent legal and equitable right in the property of her husband, which is based upon the marriage relation and the spirit of mutual coöperation which is presumed to arise therefrom and to find its fruition in the joint accumulation of property to serve their mutual needs and to avert or minimize the adverse contingencies of life. Judicial recognition of these principles is well justified by the social and economic history of the state. In pioneer times, the family usually commenced life with little or no property. Land

was cheap and easily acquired. The combined efforts and economies of the husband and wife for a long stretch of years usually resulted in prosperity—in the accumulation of the familiar forms of Kansas property. During the years of mutual industry, self-denial and domestic harmony of the married couple, it would not ordinarily be important whether each succeeding tract of land or other property acquired by their joint efforts was taken in the name of the husband or wife. If they lived together happily, both would enjoy the property, and upon the death of one of them, the other's half interest would completely mature, and the statutes of wills and of descents and distributions would protect it. If their marital partnership—for the joint accumulations of property by a husband and wife are slightly analogous to that of a partnership—is wrecked by marital discord, and their troubles become the concern of a divorce court, the court may equitably divide the property accumulated during the marriage relation. It is not only right and just and constitutional that the court should have power to do so, but it would outrage the Kansas sense of justice if the law or the court's decree were otherwise. And not only may the court do so when an absolute divorce is denied, but—

"In any other [divorce] case where a divorce is refused, the court may for good cause shown make such order as may be proper . . . for the control and equitable division and disposition of the property of the parties, or of either of them, as may be proper, equitable and just, having due regard to the time and manner of acquiring such property, whether the title thereto be in either or both of said parties." (Gen. Stat. 1915, § 7576.)

What would have been the predicament of this plaintiff if this statute and the decision of the court based thereon did not protect her? Had not this judgment been entered, this woman would have been condemned to parsimonious indigence in her old age, while her husband, who was sworn and bound by the laws of God and man to protect and comfort her to the best of his ability, squandered their accumulations of thirty-five years of industry and economy, because of a fatuous notion that all this wealth of lands and goods was his exclusively and not his wife's nor any concern of hers; he would give it to strangers rather than see it inure to her benefit; he would "rather throw a five-dollar bill in the river" than see it invested in a hat to

adorn his wife's head—rather than intrust her with any sum of money, because of the possibility that she would contribute to the support of her church; and all the while he was bestowing thousands of dollars on the church of his preference.

The Kansas constitution and the Kansas statutes which protect the just rights of the wife, and upon which the court's judgment was based, antedate the defendant's marriage with this plaintiff, and they were and are a part of defendant's marriage obligation. For good cause shown—his long years of tyranny over his wife, his oppressive denial of her right to a fair share in the family purse, his deliberate attempts to reduce her to poverty by conveying their properties to other persons without consideration and without her consent, surreptitiously conveying to strangers the house that sheltered her as a home—the record discloses all this and much more—the trial court was justified in its judgment under the statute, and the statute itself offends neither state nor federal constitution.

This case differs in no fundamental way from our prior decisions: (*Busenbark v. Busenbark*, 33 Kan. 572, 7 Pac. 245; *Green v. Green*, 34 Kan. 740, 10 Pac. 156; *Snodgrass v. Snodgrass*, 40 Kan. 494, 20 Pac. 203; *Van Brunt v. Van Brunt*, 52 Kan. 380, 34 Pac. 1117; *In re Johnston*, 54 Kan. 726, 39 Pac. 725; *Small v. Small*, 56 Kan. 1, 14-15, 42 Pac. 323; *Johnson v. Johnson*, 57 Kan. 343, 46 Pac. 700; *Raper v. Raper*, 58 Kan. 590, 50 Pac. 502; *Bowers v. Bowers*, 70 Kan. 164, 78 Pac. 430; *McKelvey v. McKelvey*, 75 Kan. 325, 89 Pac. 663; *Rullman v. Rullman*, 80 Kan. 691, 102 Pac. 1102; *Danielson v. Danielson*, 99 Kan. 222, 161 Pac. 623; *McCormick v. McCormick*, 100 Kan. 585, 165 Pac. 285.)

These decisions, which are practically all founded upon the statute relating to divorce and separation, are not at variance with *Hamblin v. Marchant*,* 103 Kan. 508, 175 Pac. 678, which, under another valid statute, barred a spouse who had murdered her husband from taking his property under the law of descents and distributions.

Passing to other questions raised by appellant, it is contended that this is not a divorce case, since divorce was refused. The divorce statute covers other matters than absolute divorce

---

* A rehearing was allowed in this case January 17, 1919, and is now pending.—RE-PORTER.

*a vinculo matrimonii*, and has features like the division of property which may be decreed, as in divorce *a mensa et thoro*, to which our statutory provisions and this judgment are analogous. In a divorce action, all matters which relate to or grow out of the marriage relation may be adjudicated. (Civ. Code, §§ 663-674, Gen. Stat. 1915, §§ 7571-7582; 14 Cyc. 579.) The trial court's judgment, in substance, was, that while an absolute divorce should not be granted, a certain amount of freedom for each of the parties touching property matters should be awarded, and to that end the division of property was made. This is sanctioned by the statute, and by the many precedents above cited. The statute says:

"And in such case the order of the court shall vest in the parties a fee-simple title to the property so set apart or decreed to them, and each party shall have the right to convey, devise and dispose of the same without the consent of the other." (Gen. Stat. 1915, § 7576.)

Touching the sufficiency of the evidence, there is no difficulty. Had the trial court gone the full length of granting an absolute divorce, such conclusion, in view of the evidence, could not have been disturbed.

So far as the equitable nature of the division of the properties is concerned, this court can discern no injustice. That defendant may have seriously impaired his title and right to some or many of the properties decreed to him separately, is no one's fault but his own. It was by his own acts that he became obligated to the Bible institute, if such obligation is enforceable. Moreover, this court could not interfere with the trial court's division of the property, unless we were prepared to say that such division was manifestly unjust. (*Danielson v. Danielson*, 99 Kan. 222, 226, 161 Pac. 623.)

Complaint is made of the trial court's finding that the plaintiff's conduct during her married life was not subject to criticism, and that this finding was against the *weight* of the evidence. There was ample evidence to support the finding, and an appellate court has little concern with the evidence to the contrary. (*Brecheisen v. Clark*, 103 Kan. 662, 176 Pac. 137.) Furthermore, if the trial court had found that the wife was partly in the wrong, or in *equal* wrong with her husband, such finding would not have compelled a different judgment from

the one decreed. Such in terms is the language of the statute on which the judgment was founded.

A final contention is urged against the allowance of $2,500 to the wife in computing the division of property allowed her, and in ordering the payment of that sum in installments. The manifest purpose of the trial court was to effect a division of the property in approximately equal parts. It cannot be discerned how that matter harmed the plaintiff. The court could have awarded plaintiff a sum of money and impressed a lien on the property separately decreed to defendant to secure its payment, and could have ordered such property sold in order to satisfy such award, but presumably the court's order was prompted by its familiarity with defendant's financial condition and perhaps by leniency toward him.

There is no error in the record, and the judgment is affirmed.