No. 23,095.

LAURA J. DEEDS, *Appellant,* v. JOHN L. DEEDS, *Appellee.*

SYLLABUS BY THE COURT.

1. DIVORCE—*Award of Alimony—Judicial Discretion.* The record examined, and *held,* that the court in awarding alimony to the plaintiff committed no abuse of discretion.

2. SAME—*Allowance of Attorney's Fee.* The sum, allowed as attorney fees to the plaintiff, approved.

Appeal from Rice district court; DANIEL A. BANTA, judge. Opinion filed April 9, 1921. Affirmed.

*Frank L. Martin,* of Hutchinson, and *L. E. Quinlon,* of Lyons, for the appellant.

*W. W. Stahl, Samuel Jones,* and *Ben Jones,* all of Lyons, for the appellee.

The opinion of the court was delivered by

WEST, J.: When the plaintiff was forty-nine years old and the defendant was sixteen years her senior she advertised for a husband and found one in him. He was a widower with a son and daughter and she was a widow with a boy about ten years old. The marriage occurred in July, 1912. Neither the abstract nor the briefs tell us when the action was begun, but counsel say in one place that the plaintiff lived with the defendant seven and one-half years, which indicates that it might have been begun about January, 1920.

In the petition the wife alleged that the defendant had been guilty of extreme cruelty and gross neglect of duty, and had cursed and reviled her and called her bad names and charged her with infidelity. That once after a separation, in 1917, she forgave him on the promise of doing better, but when she requested small sums of money he forced her to take in sewing and earn money for her own clothing. She also alleged that there was an oral antenuptial contract by the terms of which the defendant promised her if she would marry him his two children should inherit or be the devisees of one-half of his property and that at his death the plaintiff should have the

remaining half thereof. That the plaintiff married the defendant upon these terms, keeping all her obligations as his wife and in writing gave her consent to his last will and testament by which he gave to each of his children a good farm in Rice county, Kansas, subject to his life estate therein. That some time before this action was begun he undertook to put all of his property out of his name, and as a part of the scheme his children brought suit in Stanton county, claiming practically all of the property on the theory that it belonged to their mother in her lifetime, and that the defendant by collusion made default.

The plaintiff testified that without any occasion he would become angry, call her vile names, charging her with "running out and tearing up with dirty dogs all over town," and that he accused her of being a prostitute. The defendant testified, among other things, that before the marriage he told the plaintiff what he had, that he was worth about $20,000, and all the Rice county land belonged to his two children and there was nothing said about her having one-half of the property and the children the other half, and that they got along "fairly good the first year" and after that—

"We didn't get along very good. She wanted me to deed her half of the property, and just kept nagging at me to deed half of the property to her; and I told her the property would keep till I was through and then she would get her share at my death; and she thought it would make her safer; and I told her I was not going to steal this property and at my death she would get her share of it."

He testified that she had some insurance which she kept paid up for the benefit of her folks, and he tried to get her to drop it; that he furnished some cows but did not get any butter because she took all of it to raise money to keep this insurance and buy things for her people back in Ohio. He denied that he cursed her, and he said:

"She would nag at me till, if a man wouldn't curse he would have no sense. I couldn't help it. There is no man living could help it."

He complained that she sat up nights working and that—

"She said if she dropped it she wouldn't have anything to do. . . . Well, gosh, she was up till two o'clock many nights, and I would get up and cut out the lights, and her son would get up and run to where the meter was and wire round the meter and steal the lights, and I caught him doing it, and made him take the wire out."

He said that a good deal of the time he had to do his own cooking and complained because she contracted a small bill for Christian science treatment; that she cooked for harvesters and threshers and took in sewing and after October, 1917, she refused to cohabit with him unless he would deed her the property; and that he accumulated some property from the combined efforts of himself and his first wife and certain money which she furnished and that in 1887 he formed a partnership with certain men and the partnership failed and he mortgaged his home to start up again.

The court, in its opinion, stated that the defendant had property worth $26,500, besides that covered by the will already referred to; that the Rice county land was worth $38,000 and that the only property owned by his first wife at the time of her death was certain property in Lyons, Kan., and that this, worth $2,000, which came from her estate, was all he derived from her. The court also concluded that there was no evidence to show any trust touching the estate of the defendant. It was also observed that a month after the marriage the son and his wife conveyed to a brother-in-law the real estate covered by the will for the consideration of one dollar, and on the same day the brother-in-law reconveyed all the property to the two children for the consideration of one dollar, and in less than thirty days thereafter the daughter reconveyed all her interest back to her father, the defendant, for one dollar, and shortly thereafter the son reconveyed his interest to the father.

The court found that the defendant had been guilty of extreme cruelty of a character sufficient to warrant a divorce, but very little of the evidence is set out, and we are unable to say, therefore, that this finding was not sustained thereby. It was found that the property, standing in the name of the defendant, was not accumulated through the efforts of the plaintiff or that his estate was enhanced by reason of her participation in his affairs; and also that the proof did not sustain the claim of an antenuptial contract.

"This marriage was one of convenience and like all such marriages, has ended in disaster. I was not very favorably impressed with the testimony of either one of the parties to this suit. They both possess an irascible disposition; easily and unnecessarily provoked to anger,

Deeds v. Deeds.

testy, inconsistent and intolerant; each anxious to cast all the odium upon the other without assuming any responsibility whatever. . . . Where, therefore, the parties seem to be in equal wrong; each guilty of an act which would be ground for divorce under the statute, the court has a discretionary power which it may exercise."

The plaintiff was awarded alimony in the sum of $4,000. She appeals and complains of the inadequacy of the amount, and presents authorities in support of her contention that it should be greatly enlarged.

The court found that $38,000 worth of property had been conveyed to the defendant's children and that he still had $26,-500 worth without any trust feature attached for the benefit of any one. The defendant testified that his income for 1919 was something like $3,500, and that his average income for six years would probably be about $2,000; he did not think his income for 1918 was as much as $4,000.

The statute provides that when a divorce shall be granted by reason of the fault or aggression of the husband the wife shall be allowed such alimony out of the husband's real and personal property as the court shall think reasonable. (Civ. Code, § 673.) In *Packard v. Packard,* 34 Kan. 53, 7 Pac. 628, it was said that as the divorce to the wife was granted by reason of the fault and aggression of the husband she should be allowed such alimony as would maintain her and her children in as good condition as if she were still living with her husband. In *Leach v. Leach,* 46 Kan. 724, 27 Pac. 131, where the divorce was granted to the husband for the fault of the wife, and he had property worth from ten to fourteen thousand dollars, and owed about $500, and he was required to pay all the costs and support all of the children, five in number, it was held that the award of $2,500, in addition to certain personal property, was not erroneous. It was said in the opinion that ordinarily $2,500 or $3,000, out of an estate worth from $10,000 to $14,-000, would be too small, but in this case it was probably right, and at most this court could not say that the court below should grant her any larger sum. In *Johnson v. Johnson,* 66 Kan. 546, 72 Pac. 267, it was said:

"In awarding alimony and in the adjustment of financial matters as between divorced parties, no little latitude is allowed to the court in the making of its decree. The statute requires that such alimony be allowed as the court shall think reasonable. The adjustment of the matters involved is within the discretion of the court. The judge is re-

quired thoroughly to inform himself with respect thereto. The order proper to be made depends upon the circumstances of each case. . . . Many things may have come within the circle of the court's investigation in all these respects, not shown by the record." (p. 548.)

The court said in *The State v. Foren,* 78 Kan. 654, 97 Pac. 791:

"Discretion is the freedom to act according to one's judgment; and judicial discretion implies the liberty to act as a judge should act, applying the rules and analogies of the law to the facts found after weighing and examining the evidence—to act upon fair judicial consideration, and not arbitrarily. When so acting in a matter committed to the discretion of the court by the law the judgment ought not to be overruled by a reviewing court, for to do so would be to deny the right to exercise the discretion given by the law itself." (p. 258.)

The converse was set forth in *Williams v. Parsons,* 79 Kan. 202, 99 Pac. 216, where in speaking of the abuse of discretion, it was said:

"As that term is ordinarily used it implies not merely an error in judgment, but perversity of will, passion, or moral delinquency (And. Law Dict. p. 363); but the term is applied here to characterize the denial of the rights of citizens clearly given by the constitution and the laws, which a just discretion will not permit." (p. 207.)

And the following was quoted with approval—

" 'It is really a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence.' (*Murray v. Buell and others,* 74 Wis. 14, 19, 41 N. W. 1010.)" (p. 207.)

In *Miller v. Miller,* 97 Kan. 704, 156 Pac. 695, the rule laid down in 1 R. C. L. 929, was quoted:

" 'The determination of the amount of permanent alimony is controlled by no fixed standard, but rests, rather, in the sound discretion of the court, which, being judicial in character, is not liable to be reviewed by an appellate court except where it is evident that there has been a clear case of abuse thereof.' " (p. 705.)

In *Danielson v. Danielson,* 99 Kan. 222, 161 Pac. 623, Mr. Justice Burch, speaking for the court said:

"A division of property under a statute of this character depends on the peculiar circumstances of the case. . . . The question here is not simply whether or not the district court was too liberal in its allowance to the defendant, but whether or not the division was so manifestly inequitable and unjust that this court should interfere." (p. 226.) (See, also, *Swalp v. Swalp,* 104 Kan. 171, 178 Pac. 415.)

The statute expressly vests in the district court the authority to make such award as the court "shall think reasonable,"

and knowing as we do that the trial court had a chance to get into the atmosphere of the case and catch the spirit actuating the parties and gain a knowledge impossible to us examining at this long distance the cold pages of the record, we are unable to hold that the discretion vested so completely by the legislature was abused.

Complaint is also made that the court allowed only $250 for the plaintiff's attorney fees and suggests that she had a contract to pay her attorneys $1,000, and that the defendant, no doubt, obligated himself to pay a much larger sum to the array of counsel employed by him. Again, we are met by the condition of the record which bears no evidence of abuse of discretion touching this matter.

The decree is affirmed.