# FREDERICK F. SCHNEIDER *v.* JOSEPH M. HAWKINS ET AL.

[No. 48, October Term, 1940.]

22

*Decided December 17th, 1940.*

*Robert E. Kanode,* for the appellant.

*Randolph Barton, Jr.,* with whom were *H. Courtenay Jenifer* and *James D. C. Downes* on the brief, for the appellees.

DELAPLAINE, J., delivered the opinion of the Court.

Frederick F. Schneider, German Consul, is appealing from an order of the Orphans' Court of Baltimore County refusing his application for letters of administration on the estate of Albert Linz, a German citizen, who resided in Catonsville and died on June 20th, 1940.

On June 24th, Joseph M. Hawkins and Oscar M. Grimes, the appellees, presented an application alleging that Linz died intestate at the age of eighty-four leaving real and personal property in Baltimore County but no heirs or next of kin anywhere in the State of Maryland; that for a number of years he had sought their advice regarding investments and the management of his property; and moreover had expressed the wish that after his death they would settle his estate.

Later that day Consul Schneider filed his petition alleging that Linz had immigrated to this state more than fifty years ago, but had never applied for naturalization as an American citizen; and, while he has no heirs or next of kin within the United States, he is survived by collateral relatives in Germany. He claims that under the provisions of the Treaty of Friendship, Commerce and Consular Rights between the United States and Germany, signed in Washington on December 8th, 1923, and proclaimed by President Coolidge on October 14th, 1925, 44 Stat. 2132, he is entitled to letters on this estate by virtue of his office as Consul of the German government accredited to the Consulate District comprising the State of Maryland.

On the same day, after both petitions had been filed, the Orphans' Court appointed the appellees and ordered them to give bond in the sum of $2000. On June 25th, the court passed an order refusing the application of the appellant.

Under the Maryland testamentary statute, it is not necessary to give notice to a party entitled to administration if he be out of the state. Code, art. 93, sec. 33. The statute also provides: "If there shall be neither husband, nor wife, nor child, nor grandchild, nor father,

nor brother, nor sister, nor mother, or if these be incapable, or decline, or refuse to appear on proper summons or notice, or if other relations and creditors shall neglect to apply, administration may be granted at the discretion of the court." Code, art. 93, sec. 32. When a person dies intestate and leaves no relatives residing within the state, the orphans' court has authority to grant letters of administration to some one not related to the deceased, and such letters are not subject to revocation except in case of fraud or mistake. If no relatives are living in the state and no creditor applies for letters, the orphans' court has the undoubted right to use its discretion in appointing an administrator, and its discretion is not reviewable by the Court of Appeals. *Georgetown College v. Browne,* 34 Md. 450, 458, 459; *Williams v. Addison,* 93 Md. 41, 47, 48 A. 458, 460; *Jones v. Harbaugh,* 93 Md. 269, 274, 275, 48 A. 827, 829.

The question in this case is whether the Treaty with Germany supersedes the statutory law of Maryland by divesting the orphans' court of its discretion. The powers and duties of consuls rest upon the law of nations as well as upon treaties. The authority of a consul to protect the estates of his countrymen within his consulate from loss or waste is recognized by all civilized nations as inherent in the office of consul under the accepted principles of international law. 5 *Moore, Digest of International Law,* 117, 118, 123; 3 *C. J. S., Ambassadors and Consuls,* sec. 15. However, in the absence of treaty or statute, a consular officer of a foreign country has no right to administer upon an estate without judicial authorization. The United States government has the power, under the Constitution, art. 2, sec. 2, to contract with a foreign country that its consuls shall administer the estates of its citizens dying intestate in the United States. Chief Justice Hughes had said: "The treaty-making power is broad enough to cover all subjects that properly pertain to our foreign relations, * * * and the disposition of the property of aliens dying within the territory of the respective parties, is within the scope of that power, and

any conflicting law of the state must yield." *Santo-vincenzo v. Egan,* 284 U. S. 30, 40, 52 S. Ct. 81, 84, 76 L. Ed. 151, 155.

The Treaty with Germany provides: "In case of the death of a national of either of the High Contracting Parties without will or testament, in the territory of the other High Contracting Party, the consular officer of the State of which the deceased was a national and within whose district the deceased made his home at the time of death, shall, so far as the laws of the country permit and pending the appointment of an administrator and until letters of administration have been granted, be deemed qualified to take charge of the property left by the decedent for the preservation and protection of the same. Such consular officer shall have the right to be appointed as administrator within the discretion of a tribunal or other agency controlling the administration of estates provided the laws of the place where the estate is administered so permit." 44 Stat. 2132, 2153, art. 24.

It is clear from the language of the treaty that a consular officer of Germany has the right to be appointed as an administrator in the United States, provided (1) that the appointment is within the discretion of the orphans' court, and (2) that the appointment does not conflict with any law of the state. The term "discretion" denotes freedom to act according to one's judgment in the asbsence of a hard and fast rule. When applied to public officials, "discretion" is the power conferred upon them by law to act officially under certain circumstances according to the dictates of their own judgment and conscience, and uncontrolled by the judgment or conscience of others. "Judicial discretion" is defined as the power of a court to determine a question upon fair judicial consideration with regard to what is right and equitable under the law and the circumstances, and directed by reason and conscience to a just result. *Langnes v. Green,* 282 U. S. 531, 541, 51 S. Ct. 243, 247, 75 L. Ed. 520. When a court has authority to act "within its dis-

cretion," it is vested with power to decide as it considers proper, and its discretion is not subject to review by the Court of Appeals. *Watson v. Cook,* 170 Md. 377, 380, 184 A. 908. To hold that the exercise of discretion may be reviewed by a tribunal other than that upon which it is conferred would pervert and destroy the meaning of the word. *Deeds v. Deeds,* 108 Kan. 770, 196 P. 1109, 1110; *State v. Tindell,* 112 Kan. 256, 210 P. 619, 622.

But the German Consul claims that he has a paramount right to administration under the clause of the treaty providing that consular officers shall enjoy "all the rights, privileges, exemptions and immunities which are enjoyed by officers of the same grade of the most favored nation." 44 Stat. 2147, art. 17. He relies upon the Convention between the United States and Sweden, signed on June 1st, 1910, and proclaimed on March 20th, 1911, which stipulates that in the event a citizen of Sweden dies intestate in the United States, the Swedish consular officer "shall, so far as the laws of each country will permit and pending the appointment of an administrator and until letters of administration have been granted, take charge of the property left by the deceased for the benefit of his lawful heirs and creditors, and, moreover, have the right to be appointed as administrator of such estate." 37 Stat. 1479, 1487, art. 14.

In a similar case, where a subject of Italy residing in California died intestate and all his heirs resided in Italy, the Supreme Court of California held that the Consul General of Italy did not have the exclusive right to letters of administration upon his estate under the most favored nation clause of the Italian Treaty of 1878, 20 Stat. 732, and the provisions of the Argentine Treaty of 1853, 10 Stat. 1009, in preference to the public administrator. The court uttered this warning against the claim of the Consul General of Italy: "The question presented * * * is also of grave importance because its solution in favor of the appellant necessarily ascribes to the federal government the intent, by means of its treaty-making power, to materially abridge the autonomy of the several

states and to interfere with and direct the state tribunals in proceedings affecting private property within their jurisdictions. It is obvious that such intent is not to be lightly imputed to the federal government, and that it cannot be allowed to exist except where the language used in a treaty plainly expresses it, or necessarily implies it." In *re Ghio's Estate,* 157 Cal. 552, 557, 108 P. 516, 523.

In 1912 the judgment in the California case was affirmed by the Supreme Court of the United States. In delivering the opinion of the court, Justice Day declared: "It is further to be observed that treaties are the subject of careful consideration before they are entered into, and are drawn by persons competent to express their meaning, and to choose apt words in which to embody the purposes of the high contracting parties. Had it been the intention to commit the administration of estates of citizens of one country, dying in another, exclusively to the consul of the foreign nation. It would have declared that purpose in unmistakable terms." *Rocca v. Thompson,* 223 U. S. 317, 32 S. Ct. 207, 210 56 L. Ed. 453, 458. Prior to 1912 a number of courts held that the treaty stipulations gave the consular officers of foreign countries an exclusive right to administer estates of their deceased countrymen, but the conflict of authority was settled by the decision of the Supreme Court. While the cases have been annotated because of their historical interest, they are obviously no longer authoritative. 100 *A. L. R.* 1529; 16 *Am. Jur., Diplomatic and Consular Officers,* sec. 16. The prevailing view is that the provisions of the treaties are "not so mandatory as to require that state laws regarding the administration of estates should be superseded." 100 *A. L. R.* 1531; 16 *Am. Jur., Diplomatic and Consular Officers,* sec. 17.

The same question came before the Court of Appeals of Maryland in 1919, after a Greek consular officer had been denied letters of administration in Baltimore City on the estate of an intestate citizen of Greece. The consular officer relied on the Convention between the United

States and Sweden, but this Court held that he did not have a paramount and exclusive right to administer, and affirmed the order of the Orphans' Court appointing an attorney who was not related to the deceased. While the Constitution, art. 6, declares that all treaties under the authority of the United States shall be the supreme law of the land, the courts are not required to give them strained or unreasonable construction so as to accord to foreigners privileges which are denied to citizens of the United States. Chief Judge Boyd stated in the opinion of the court: "It would nòt be just to assume that in making a treaty with a foreign country laws of the different states were intended to be repealed or ignored, in the absence of express language or clear implication showing such intent * * *. To permit a representative of a foreign government to set aside the provisions of testamentary laws, and take from the probate courts * * * the power to determine who shall administer upon estates, when otherwise it would be in the discretion of the courts, would be conferring broad powers on him * * *; for if a consul general has paramount right to administer, and can require our courts to remove administrators appointed according to the laws of the state, and let some one he designates qualify, the consul general, or his representative, virtually makes the appointment, and not only that, but may do so when it suits his convenience, and not before." *Chryssikos v. Demarco,* 134 Md. 533, 539, 107 A. 358, 360.

A similar view was taken by the Court of Appeals of New York in a case wherein a subject of Italy had died intestate, leaving his wife and child and parents living in Italy, and a brother was refused letters of administration on the estate. It was held that the appointment of the Italian Consul was improper, notwithstanding the most favored nation clause. Judge Cardozo, delivering the opinion, said: "The function of consuls is to preserve derelict estates. When their countrymen die in foreign lands it is their duty to step in and guard the stranded property from waste. This right belongs to them, ir-

respective of express statute, or treaty, by virtue of their office. * * * The custody thus acquired is, however, provisional. It yields to the superior right of legally constituted representatives. * * * Consuls are to have the right, where the estate is in peril, to intervene at once, and, if other representatives are lacking, they are, moreover, to have the right to be appointed administrators themselves. They are to have this right, not to displace others competent under local law, but the better to fulfill their inherent function as provisional conservators." *In re D'Adamo's Estate,* 212 N. Y. 214, 223, 224, 225, 106 N. E. 81, 84, 85.

We see no reason to overrule the opinion delivered by Chief Judge Boyd in our own court, to follow a decision of the Court of Appeals for the District of Columbia, *Diamantopoulos v. Glekas,* 56 App. D. C. 151, 11 Fed. 2nd 200, relied upon by the appellant. We cannot agree with the ruling in that case that a stipulation divesting an orphans' court of its discretion would not contravene the statute. We observe, moreover, that the same court in a later case acknowledged that the opinion of Judge Cardozo in the New York case was so exhaustive and convincing that both his reasoning and conclusion were adopted as its own, and concluded that the power of a consul is extended by treaty only "to permit the consul to be appointed administrator" when there is no relative, creditor or other person qualified to serve. *Lely v. Kalinoglu,* 64 App. D. C. 213, 76 Fed. 2nd 983, 984, 985, 100 *A. L. R.* 1523, 1527.

Since the Orphans' Court has the right to exercise its discretion in granting letters of administration in this case, and its discretion has not been divested by the Treaty with Germany, we affirm the order refusing the application of the appellant. Since his application was made presumably in the discharge of what he considered to be his official duty, we direct that the costs be paid out of the estate.

*Order affirmed, the costs to be paid out of
the estate.*