**COMMISSIONER OF INTERNAL REVENUE v. TIMMER.**

**SAME v. EIFERT.**

**In re BRADBURY.**

Nos. 6726, 6727.

Circuit Court of Appeals, Sixth Circuit.

June 6, 1935.

. Helen R. Carloss, of Washington, D. C. (Frank J. Wideman and Sewall Key, both of Washington, D. C., on the brief), for petitioner.

Jacob S. Seidman, of New York City, for respondents.

Before MOORMAN, HICKS, and ALLEN, Circuit Judges.

MOORMAN, Circuit Judge.

Prior to 1920, I. C. Bradbury and Earl C. Eifert were employed by a corporation engaged in the investment banking business. In March, 1920, they, with another employee, Kirkhuff, determined to sever their connection with the corporation and set up a business of their own. The stock of the corporation was then owned by three men, who, in order to retain the three employees, entered into a contract with them on April 1, 1920, agreeing on behalf of the corporation to reorganize it with a new capital structure consisting of an equal number of shares of preferred and common stock, and to issue to each of the three employees 8

per cent. of the new issue of the common stock. The remaining common stock with all the preferred was to be equally divided among the old stockholders. Provision was made for retiring the preferred stock according to a formulated plan. It was agreed that, if any stockholder should wish to sell his stock, the other stockholders should have the option of buying it before it was offered to outside interests. Prior to the execution of the contract, Bradbury and Eifert had received from $17,000 to $25,000 a year in salaries and commissions from the corporation. Under the contract the salary of each of them was fixed at $8,000 a year. After it was executed, the authority of both was increased. Bradbury was elected assistant secretary and treasurer of the corporation, and was put in charge of its Grand Rapids office; Eifert became sales manager, with supervision over all salesmen. The 1920 agreement was later supplemented by two other agreements which provided that the corporation should carry insurance on the lives of the old stockholders and use the proceeds thereof, upon the death of any such stockholder, to buy in the preferred stock allotted to him by the 1920 agreement, and also that, upon the death of any common stockholder, the corporation should have the option of purchasing his stock.

The original contract contemplated that there might be considerable delay in carrying out the reorganization, and provided that in such contingency the property rights of the parties "in the corporation" should be the same as though it had been reorganized as of the date of the contract, April 1, 1920. The reorganization was never completed, and in the latter part of 1924 the old stockholders began negotiations with Bradbury and Eifert for the purchase of their respective interests in the corporation. On May 28, 1925, a contract was entered into by which the corporation agreed to pay to each of them $200,000 for his interest in the corporation. The contract provided that each of them should continue to have an undivided 8 per cent. interest in the profits which might be realized from certain shares of stock owned by the corporation. Concurrently with the execution of the contract Bradbury and Eifert entered into employment agreements with the corporation for a period of five years, whereby they were to receive specified salaries plus a percentage of the net profits realized from the business of the corporation at Grand Rapids, Mich. Pursuant to the contract, the corporation paid to each of them the sum of $200,000. Each, in his tax return for the taxable year 1925, reported the entire amount of this payment as capital gain on the sale of his interest in the corporation. The Commissioner treated it as compensation for personal services taxable as ordinary income at normal and surtax rates, and determined deficiencies. The Board of Tax Appeals held that it was derived from the sale of a capital asset, and that the difference between the fair market value of the asset when acquired in 1920 and the selling price in 1925 was capital gain and should be taxed as such under section 208 of the Revenue Act of 1926 (26, USCA § 939 note). 23 B. T. A. 1351, 1352.

Under the contract of April 1, 1920, Bradbury and Eifert acquired a present interest in the old corporation and not merely an interest contingent upon its reorganization. It was stated in the contract that the property rights of the parties in the corporation should be "precisely as though" its reorganization had become effective and the stock issued April 1, 1920. While there was never a reorganization in form, the parties treated the company as reorganized according to the terms of the contract. After the execution of the contract, each of the new stockholders was elected an officer of the corporation and given authority corresponding to his official position. We think it was the purpose of the old stockholders to give them a property interest in the corporation in order to retain their services, and it is our further view that this purpose was effected upon the execution of the contract. The finding of the Board of Tax Appeals to this effect is supported by both the law and the evidence.

The Board found that the value of the respective interests of the taxpayers in the corporation at the time they were acquired was $85,000, and that the only capital gain was the difference between that amount and the selling price. The Commissioner contends that these interests or property rights did not cost the taxpayers anything, and for that reason the entire $200,000 should be treated as capital gains. We do not agree. The capital base is to be determined by the true

value. Robinson v. Commissioner, 59 F.(2d) 1008 (6 C. C. A.). There is no question of estoppel from claiming the value when received as the capital base because of failure to return the amount thereof as income as of that date, for the record does not show that there was such failure.

The orders of the Board are affirmed.