**George F. COLLINS, Jr., Petitioner,**

v.

**COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.**

**No. 9260.**

United States Court of Appeals
Tenth Circuit.

Jan. 2, 1968.

Rehearing Denied March 7, 1968.

Donald P. Moyers and William A. Goffe, Tulsa, Okl., for petitioner.

Robert J. Campbell, Attorney, Department of Justice (Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson and Meyer Rothwacks, Attorneys, Department of Justice, Washington, D. C., on the brief), for respondent.

Before PICKETT, HILL and HICKEY, Circuit Judges.

HILL, Circuit Judge.

This petition for review is from a decision of the Tax Court of the United States determining that a transfer of certain shares of corporate stock by petitioner to his wife was, for Federal income tax purposes, a disposition of property and a taxable transaction.

The pertinent basic facts are not in dispute and may be summarized as follows: In 1942, petitioner, George F. Collins, Jr., married Beverly Lorton. Without question, Beverly brought property not exceeding $10,000.00 into the marriage. Petitioner, at that time, owned 167 shares of stock in the Liberty Glass Company and was in the process of inheriting a great number more shares of stock from the estate of his late father. Eventually, petitioner received 664 shares of common stock and 2,003 shares of preferred stock in Liberty from this estate. Because of the prosperity of the company stock dividends were declared from time to time and by 1951 petitioner owned a total of 132,960 shares of Liberty stock.

In 1959, Beverly filed suit against petitioner asking for divorce, a just and equitable division of the property jointly acquired between the parties during marriage, alimony and other relief. Immediately prior to the filing of this divorce suit the parties had entered into an agreement in writing wherein the purpose was stated "to finally and for all times settle and determine their property rights, any right of support and maintenance of Second Party by First Party, together with all other rights existing * * * growing out of their said marriage relation."

Beverly was granted a divorce, the property settlement agreement was approved by the court and pursuant thereto petitioner transferred 26,592 shares of Liberty Glass stock to Beverly. All of the other provisions of the agreement

were complied with. Petitioner did not consider the transfer of the stock to be a taxable transaction but the respondent, in 1965 sent petitioner a notice of deficiency because of the transaction and this litigation resulted. In the Tax Court petitioner urged that there should be no deficiency because the transfer was in recognition of property rights and thus not a taxable event and in any event the deficiency as found by the Commissioner was based on a gain of $880,184.81 whereas the actual gain was no more than $458,840.81. The Tax Court found that there was a taxable disposition but that the Commissioner's deficiency was too high and lowered the amount of the deficiency to $128,006.20.[1]

Petitioner bottoms his case upon an Oklahoma statute, 12 Okl.Stat.Ann. § 1278,[2] and the numerous Oklahoma Supreme Court decisions interpreting the statute. He contends that this statute gives each spouse a vested interest in property jointly acquired during their marriage and the extent of that vested interest shall be determined by the court in any action brought to terminate the marriage relationship.

The Commissioner seeks to sustain the decision of the Tax Court by arguing that the Oklahoma statute did not vest any property right in petitioner's spouse prior to the divorce decree; that her marital rights did not resemble those of co-ownership; she had no descendible interest in the stock; she could not have prevented the disposition of the stock by the husband at any time prior

to the divorce; she had no claim to a fixed percentage of the property but the extent of her claim was subject to a judicial determination of what was "just and reasonable"; and, that determination depended upon factors other than her efforts during the marriage to enhance the value of the property, e. g., her needs, her station in life, costs of educating the children, etc.

A very similar situation was presented to the Supreme Court in United States v. Davis, 370 U.S. 65, 82 S.Ct. 1190, 8 L.Ed.2d 335. The Supreme Court noted that the controlling statutory language[3] is too general to include or exclude conclusively the transaction presently in issue. The argument presented there was basically the same as that presented in the instant case. The taxpayer claimed that the disposition of the property was a division of jointly owned property and thus non-taxable while the government contended that the disposition was more in the nature of a taxable transfer of property in exchange for the release of an independent legal obligation. The facts of the Davis case show that the taxpayer and his wife made a voluntary property settlement and separation agreement calling for support payments to the wife and minor child in addition to the transfer of certain personal property to the wife. In question was an item of 1,000 shares of Dupont stock specifically called a "division in settlement of their property." The divorce and property settlement were pursuant to Delaware law. The Supreme Court found that the transaction was not

---

1. The question of valuation is not raised on this appeal.

2. The pertinent part is as follows:
 "As to such property, whether real or personal, as shall have been acquired by the parties jointly during their marriage, whether title thereto be in either or both of said parties, the court shall make such division between the parties respectively as may appear just and reasonable, by a division of the property in kind, or by setting the same apart to one of the parties, and requiring the other thereof to pay such sum as may be just and

proper to effect a fair and just division thereof."

3. Internal Revenue Code of 1954, §§ 1001, 1002.
 § 1001(c) states: "In the case of a sale or exchange of property, the extent to which the gain or loss determined under this section shall be recognized for purposes of this subtitle shall be determined under section 1002."
 § 1002 states: "Except as otherwise provided in this subtitle, on the sale or exchange of property the entire amount of the gain or loss, determined under section 1001, shall be recognized."

a division of property by co-owners but was merely a satisfaction of a burden placed on the husband's property.[4] The court went on to note that to hold the disposition taxable would be in accord with decisions of the Tax Court and various Circuit Courts.

This court applied United States v. Davis in Pulliam v. C.I.R., 10 Cir., 329 F.2d 97. In so doing the court looked at Colorado's law relative to the wife's interests and found the liability of the husband leading to the division of property was "more in the nature of a personal obligation" and thus a taxable disposition.

 There is no dispute but that we must, as the Supreme Court did in the Davis case and this court did in Pulliam v. C.I.R., supra, look to the state law controlling the disposition of the property to determine the exact nature of that disposition for tax characteristic purposes. It is petitioner's contention in the instant case that an examination of the pertinent Oklahoma law reveals that the disposition was the division of jointly owned property.

Oklahoma is not a community property state, nonetheless petitioner argues that Oklahoma by statutory command has created unique rights in the partners to the marriage that resemble those found in the community property states.

The statute in question, 12 Okl.Stat. Ann. § 1278,[5] has received considerable comment in Oklahoma cases although only inferentially do the majority of these cases benefit us in determining the actual rights established by the statute. One of the earliest Oklahoma cases that considers the effect of section 1278 is Thompson v. Thompson, 70 Okl. 207, 173 P. 1037. Therein the court states that the statute regards property of married persons as falling into two classes, separate and "property which has accumulated by the business side of the marriage. This latter character of property, very similar in conception to community property of the community property states, is regarded as being held as a species of common ownership." Id. at 1038. The tenor of the Oklahoma cases dealing with this problem is that the division is of jointly owned property and is to be considered separate from the husband's obligations of alimony and support and maintenance. As set out in perhaps the leading Oklahoma case, Tobin v. Tobin, 89 Okl. 12, 213 P. 884, the concept of division of jointly acquired property is a different concept than provisions providing for alimony. The statute provides that the courts shall determine to what extent the property shall be divided between the parties and in the Tobin case the court sets out factors that may be considered by the court

---

4. Elements set out by the Supreme Court as supporting their decision are as follows:

> "[T]he inchoate rights granted a wife in her husband's property by the Delaware law do not even remotely reach the dignity of co-ownership. The wife has no interest—passive or active—over the management or disposition of her husband's personal property. Her rights are not descendible and she must survive him to share in his intestate estate. Upon dissolution of the marriage she shares in the property only to such extent as the court deems 'reasonable'. 13 Del.Code.Ann. § 1531(a). What is 'reasonable' might be ascertained independently of the extent of the husband's property by such criteria as the wife's financial condition, her needs in relation to her accustomed station in life, her age and health, the number of children and their ages, and the earning capacity of the husband. See, e.g., Beres v. Beres, 52 Del. 133, 154 A.2d 384 (1959). * * * Regardless of the tags, Delaware seems only to place a burden on the husband's property rather than to make the wife a part owner thereof. In the present context the rights of succession and reasonable share do not differ significantly from the husband's obligations of support and alimony. They all partake more of the personal liability of the husband than a property interest of the wife." United States v. Davis, 370 U.S. 65 at 70, 82 S.Ct. 1190 at 1193, 8 L.Ed.2d 335.

5. See footnote 2, supra.

in making such a division.[6] The court in the Tobin case states that the equitable division of the property between the parties does not necessarily mean an equal division but that the court should take into consideration the "efforts of the respective parties during their married lives." Id. at 889. Oklahoma Courts have repeatedly held that in dividing the jointly acquired property the court is not to take into consideration the need of the parties but solely the manner in which the property was acquired and the actions of both parties in accumulating an estate and retaining the estate. E. g., Tobin v. Tobin, supra; Hill v. Hill, 197 Okl. 697, 174 P.2d 232; West v. West, Okl. 268 P.2d 250. On the other hand there have been at least two Oklahoma cases in which the court considered the need of the respective parties and which of the parties would be providing for the care and maintenance of the children in making the ultimate division of the property.[7]

There are various other aspects of division of jointly acquired property that should be set out. First, the courts must make a division of the jointly acquired property pursuant to a divorce decree, West v. West, Okl., 268 P.2d 250. There is, however, no necessity that the division be equal, Tobin v. Tobin, supra, and at least theoretically a case could exist where one party received none of the jointly acquired property. In many cases, the Oklahoma Courts have awarded the husband property which had previously been held in the wife's name, Moyers v. Moyers, Okl., 372 P.2d 844; Thompson v. Thompson, supra. There is no necessity that there be an absolute divorce before the court orders the division of the jointly acquired property and there have been numerous cases where the court has awarded such a division even though there were not sufficient grounds for divorce, e. g., Miles v. Jones, 197 Okl. 684, 173 P.2d 949. The statute expressly provides and numerous cases have so held that all of the property may be awarded to one spouse with the requirement that that spouse make a payment to the other spouse in recognition of their portion of the property. Champion v. Champion, 203 Okl. 105, 218 P.2d 354.[8]

One further indication of the general nature intended by the Oklahoma Legislature for jointly acquired property is found in 84 Okl.Stat.Ann. § 213, concerning the descent and distribution of jointly acquired property. This section provides that if there is no issue between the marriage that all of the jointly acquired property goes to the surviving spouse but what remains after the surviving spouse dies goes one-half to each spouse's heirs. Oklahoma Courts have held, however, specifically that this rule is not a rule of property but is solely a rule of descent and distribution. Essex v. Washington, 198 Okl. 145, 176 P.2d 476. Although the Oklahoma Court in Davis v. Davis, 61 Okl. 275, 161 P. 190, speaks of the wife as having a

---

6. "In determining what is equity as to jointly acquired property, the court not only has a right, but should take into consideration the efforts of the respective parties during their married lives. Circumstances may arise under which, when the court under this provision of the statute, is called upon to divide the jointly acquired property, that the wife might be entitled to a large per cent. of the accumulations, or much in excess of one-half. If it should develop in the trial of the cause that the accumulations have been due to her economy, industry, frugality, and sturdy virtues, which have been a stay to the home and the constant guard of the accumulations, and at the same time it should develop that the husband has not been frugal, * * * it would not be equitable to the wife, under these circumstances, that the husband should be given half of their property." Tobin v. Tobin, supra, at 889.

7. See Shook v. Shook, Okl., 352 P.2d 376, and Bowring v. Bowring, 196 Okl. 520, 166 P.2d 415.

8. This situation would clearly result in a taxable disposition. See Rouse v. Commissioner of Internal Revenue, 6 T.C. 908, affirmed, 159 F.2d 706, 5 Cir., where such a division in a community property state was held taxable.

vested interest in the property, on other occasions, when the problem was more specifically presented, the court held that there is no vested interest in any specific property held by the spouse. In Jones v. Farris, 180 Okl. 341, 69 P.2d 344, a claim was made on property by children because of their mother's right in jointly acquired property, the children arguing that the mother's right was a vested interest. The court stated with regard to section 1278 that "The section does not purport to vest in the wife, prior to divorce, any interest in the property." Id. at 345. Thus no rights were vested in the wife sufficient to be descendible to her children.

In summation it appears that the division of jointly acquired property pursuant to a divorce decree in Oklahoma is in many instances in direct recognition of the wife's right to a share in the property. This concept, however, is not unique to Oklahoma and Kansas, as claimed by petitioner.[9] Many states confer the power upon divorce courts to transfer to the wife property of the husband.[10] It is true that no other state requires the division or so explicitly develops the concept. Nonetheless the same principle is recognized in other states.[11] Of particular importance is the comparison of Oklahoma law and Colorado law in that this court has previously held that a division under Colorado law is a taxable disposition of property.[12]

Colorado, by statute, provides that a property division may be made in addition to an award of alimony. Shapiro v. Shapiro, 115 Colo. 505, 176 P.2d 363. Two of the early Colorado cases dealing with the division of property regarded the act as an equitable division based upon the fact that the wife during the marriage had performed services which contributed to her husband's business advantage. Shapiro v. Shapiro, supra, and Wigton v. Wigton, 73 Colo. 337, 216 P. 1055. Apparently, however, this requirement that the wife make special contributions to accumulation beyond her duties as a wife does not exist today, Kraus v. Kraus, Colo., 411 P.2d 240. Therefore, in Colorado as in Oklahoma the property division is considered separately from alimony and is grounded on the concept that the wife should have a share of the property upon divorce. In holding a property division under Colorado law to be taxable this court noted that "the wife's rights during marriage do not vest in her an ownership of any part of the husband's property," Pulliam v. C.I.R., 329 F.2d 97, that "a husband who has title to the property may convey it without the consent of the wife," Id. at 98, and that the divorce court in making such division may "make such provision for payment of alimony and maintenance of the wife 'as may be reasonable'", Id. at 98.[13]

It is difficult for us to see any distinction between Oklahoma and Colorado law sufficient to justify a different characterization of the property division. In addition, whatever the nature of the rights granted by Oklahoma law to spouses in jointly acquired property it is clear they do not include the traditional ownership rights in property. These rights such as descendible interest, right to control and disposition of property and vested interest are set out by the Supreme Court in United States v. Davis, supra, as factors that

---

9. The Oklahoma statute is based on a similar Kansas statute and earlier Oklahoma cases cited Kansas cases as highly persuasive in interpretation of the statute. See Vanderslice v. Vanderslice, 195 Okl. 496, 159 P.2d 560.

10. Nelson on Divorce, § 14.104.

11. Shapiro v. Shapiro, 115 Colo. 505, 176 P.2d 363; See Nelson on Divorce, § 14.120.

12. Pulliam v. C.I.R., 329 F.2d 97.

13. Factors considered by the Colorado divorce court in making a division included: "The financial condition of the parties, the duty of the husband to support and maintain the wife, whether the wife brought any property into the marriage, the husband's earning capacity and several other factors." Pulliam v. C.I.R., supra, at 98.

distinguish a marital division in satisfaction of a legal obligation from a division between co-owners. Since these traditional elements of co-ownership are lacking the fact that in making a decision the state courts speak as though they were dividing property between co-owners does not prevent the federal courts from saying that for tax purposes the division was in satisfaction of a marital obligation and thus taxable.

The decision of the Tax Court is affirmed.