RICHARD E. WILES, JR., AND KAREN B. WILES, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6186–71. Filed April 9, 1973.

*John H. Foard,* for the petitioners.
*George T. Morse III,* for the respondent.

#### OPINION

TIETJENS, *Judge:* The Commissioner determined deficiencies in the income tax of Richard E. Wiles and his wife Karen B. Wiles as follows:

| Year | Deficiency |
| --- | --- |
| 1966 | $120, 536. 95 |
| 1967 | 936. 00 |
| 1968 | 3, 302. 68 |

Concessions were made by both parties and a Rule 50 computation will be necessary. We are asked to determine whether the transfer of appreciated stocks by petitioner Richard E. Wiles to his former wife

was a taxable event, and if it was we are asked to determine what were the values of those stocks.

All of the facts are stipulated and are so found.

Petitioners Richard E. Wiles, Jr., and Karen B. Wiles, husband and wife, resided at Shawnee Mission and at Santa Fe, N. Mex., respectively, at the time they filed their petition with this Court. Petitioners filed a joint Federal income tax return for 1966 with the district director of internal revenue at Wichita, Kans. The taxable year 1966 is the only year remaining in dispute. Petitioner Karen B. Wiles is joined herein only by virtue of the filing of a joint return with her husband and further reference to petitioner shall refer only to Richard E. Wiles, Jr.

Petitioner married Constance Wiles, now known as Constance Noah, on July 30, 1948, which marriage continued until it was dissolved by a decree of divorce issued by the District Court of Johnson County, Kans., on May 27, 1966. The decree incorporated a property settlement agreement which had been negotiated by petitioner and Constance. There was no award of alimony denominated as such. In February 1967, Constance married Brooks C. Noah, petitioner's brother-in-law and business partner.

Constance filed for divorce from petitioner in April 1965; the aforesaid District Court thereupon temporarily restrained petitioner from transferring, encumbering, or otherwise disposing of any of his or Constance's securities, other investments, and property holdings pending trial. At the time suit was filed and during the time it was pending, both petitioner and Constance held title to substantial assets which were either brought into their marriage or acquired by their joint efforts during the marriage. Petitioner owned the following in his own right:

| | |
|---|---|
| 100 | shares Atchison, Topeka & Santa Fe. |
| 78 | shares Colgate-Palmolive Co. |
| 299 | shares Goodyear Tire & Rubber Co. |
| 20 | shares Kennecott Copper Corp. |
| 50 | shares Phillips Petroleum Corp. |
| 42 | shares Republic Steel Corp. |
| 105 | shares Standard Oil of New Jersey. |
| 74 | shares First National Bank of Kansas City. |
| 67 | shares Montgomery Ward & Co. |
| 66 | shares Great Northern Railway. |
| 400 | shares Canada Dry Corp. |
| 100 | shares Otis Elevator. |
| 180 | shares Sinclair Oil Corp. |
| 100 | shares Pullman, Inc. |
| 19, 408 | shares Sunshine Biscuits, Inc. |
| 300 | shares General Motors Corp. |
| 82 | shares Martin-Marietta Corp. |
| $20, 000 | Municipal Bonds. |

One-half interest in a house in Minnesota.

Petitioner also held title to the following jointly acquired property:

- 250 shares Heart Bowl, Inc.
- 600 shares Interstate 70 Corp.
- 7,000 shares Heart Drive-In Theatre, Inc.
- 3,000 shares First American Corp.
- $80,000 note of a Mexican corporation, and a lease on that corporation's Mexican real estate.
- An airplane valued at about $35,000.
- Life insurance policies on said petitioner's life having a cash value of approximately $102,243.
- $6,500 (approximately) cash in banks.

Heart Bowl, Inc., Interstate 70 Corp., Heart Drive-In Theatre, Inc., and First American Corp. were businesses started by petitioner and Brooks C. Noah as early as 1950. Constance assisted in their development. These four corporations owned and operated Heart Drive-In Theatre in Kansas City, Mo., the Yucca Drive-In Theatre in Santa Fe, N. Mex., and the Heart Bowl in Kansas City, Mo.

During the pendency of the divorce suit, Constance owned the following in her own right:

- 110 shares American Telephone & Telegraph Co.
- 100 shares Baltimore Gas & Electric Co.
- 300 shares W. S. Dickey Clay Manufacturing Co.
- 250 shares Gas Service Co.
- 100 shares International Harvester.
- 100 shares Simmons Co.
- 50 shares Standard Brands.
- 100 shares Standard Oil of Indiana.
- 55 shares Standard Oil of New Jersey.
- 68 shares Sunshine Biscuits, Inc.
- 100 shares General Motors Corp.
- 214 shares C. A. Kiger Jewelry Co.
- Aetna Life Insurance Co. annuity paying $302.12 per year.
- Pacific Mutual Insurance Co. annuity paying $110.53 per year.
- Mutual of New York annuity paying $220.10 per year.
- Cameron crude oil lease paying $101.85 per year.

At the same time she held title to the following jointly acquired property:

- 150 shares Interstate 70 Corp.
- $50,000 Connecticut Mutual Life Insurance policy on petitioner's life.
- $100,000 Massachusetts Mutual Life Insurance policy on petitioner's life.
- Cash in banks totaling approximately $9,000.
- 1965 Buick Riviera automobile.

Petitioner and Constance were joint tenants of a residence located in Mission Hills, Kans., and the household furnishings therein. Both petitioner and Constance were separate beneficiaries of family trusts established by certain of their respective ancestors.

In anticipation of the divorce, petitioner and Constance conducted several months' negotiations for the purpose of finally settling their marital property rights. Petitioner rejected one proposal; thereafter

the parties agreed through their lawyers to divide their property equally between themselves, regardless of title ownership. To achieve this objective, they agreed to assign values to the assets that had no readily ascertainable fair market value, particularly the shares of the family corporations. As the property held in petitioner's name exceeded in value the property in Constance's name, it was agreed that Constance would retain most of the property in her name and have transferred to her within 90 days of the agreement date sufficient property of petitioner to make up one-half of the negotiated total value of the combined assets.

A large part of the regularly traded stocks in petitioner's name were at that time pledged to the First National Bank of Kansas City to secure a total indebtedness of petitioner of approximately $384,000. Constance and petitioner agreed that delivery of these securities could be delayed until after petitioner had received a distribution out of the family trusts for petitioner mentioned above in late 1966.

The property settlement was memorialized in a printed stipulation and agreement drafted by Constance's attorney and was signed by petitioner and Constance on May 27, 1966. The divorce decree was entered on the same date.

The agreement provided that the agreed value of the regularly traded securities would be the average of the market high and low thereof from January 1, 1966, through May 21, 1966. The terms of the agreement were carried out by petitioner and Constance. On October 4, 1966, petitioner delivered the shares listed below; subsequent to the date of the stipulation and agreement but prior to October 4, 1966, Sunshine Biscuits, Inc., merged with American Tobacco Co., and consequently, Constance received on the delivery date 11,750 shares of the latter under the agreed-upon formula for stock splits:

STOCKS DELIVERED TO CONSTANCE

| Number of shares | Issuer | Agreed-upon per share value | Average of the market high and low 5/27/66 | Average of the market high and low 10/4/66 |
|---|---|---|---|---|
| 77 | First National Bank of Kansas City | $78.75 | $77\frac{1}{4}$ | $73\frac{3}{8}$ |
| 67 | Montgomery Ward & Co | 34.125 | $35\frac{3}{8}_{31}$ | $24\frac{1}{2}$ |
| 66 | Great Northern Railway | 65.94 | 57 | $50\frac{5}{8}$ |
| 400 | Canada Dry Corp | 28.75 | $25\frac{3}{16}$ | $20\frac{5}{8}$ |
| 116 | Otis Elevator | 54.76 | $48\frac{5}{8}$ | $35\frac{1}{2}$ |
| 180 | Sinclair Oil Corp | 60.44 | $58\frac{7}{16}$ | $59\frac{1}{4}$ |
| 100 | Pullman, Inc | 63.06 | $57\frac{3}{8}$ | $44\frac{1}{2}$ |
| 50 | A. T. & S. Fe Railway | 36.75 | $34\frac{3}{4}$ | $27\frac{1}{2}$ |
| 39 | Colgate Palmolive | 25.50 | $24\frac{1}{4}$ | $26\frac{3}{4}$ |
| 149 | Goodyear Tire & Rubber Co | 45.94 | $48\frac{1}{2}$ | 45.812 |
| 30 | Kennecott Copper Corp | 39.312 | $39\frac{9}{16}$ | $31\frac{5}{8}$ |
| 41 | Martin Marietta Corp | 23.31 | $25\frac{1}{8}$ | 17.812 |
| 25 | Phillips Petroleum Corp | 54.25 | $50\frac{9}{16}$ | $45\frac{5}{8}$ |
| 21 | Republic Steel Corp | 41.69 | $38\frac{9}{16}$ | $31\frac{3}{4}$ |
| 52 | Standard Oil of N.J | 77.50 | $73\frac{9}{16}$ | 61.812 |
| 150 | General Motors Corp | 94.81 | $84\frac{11}{16}$ | $72\frac{1}{4}$ |
| 12 | Proctor & Gamble | 65.25 | $63\frac{11}{16}$ | 72 |
| 891 | Warner Lambert (common) | 39.875 | $37\frac{5}{8}$ | 34.812 |
| 39 | Warner Lambert (preferred) | 122.50 | $117\frac{1}{2}$ | 108 |
| 11,750 | American Tobacco Co | 36.50 | $46\frac{13}{16}$ | 30 |

The aggregate agreed value of the above-listed securities was $549,997.85; the aggregate value of the same based on the average of the market highs and lows on October 4, 1966, was $453,365.18; the aggregate value of the same based on the average of the market highs and lows on May 27, 1966, was $506,452.21. Petitioner's aggregate tax basis in the securtities was $83,169.65. The following table shows the amount of gain petitioner realized based on the three aforementioned aggregate values:

| | Agreed value | May 27 value | Oct. 4 value |
|---|---|---|---|
| Realized gains_____ | $466,828.00 | $423,282.56 | $370,186.53 |

The stocks which petitioner delivered to Constance on October 4, 1966, are the stocks upon which the Commissioner contends petitioner recognized capital gain income in 1966.

We are asked to determine whether the transfer of the appreciated stocks by petitioner to his former wife pursuant to agreement constituted a taxable exchange under sections 1001 and 1002.[1] The U.S. Supreme Court in *United States* v. *Davis*, 370 U.S. 65 (1962), indicated that such a transaction is taxable unless it amounts to no more than a division of property by coowners. Whether the recipient's interest in the property that was held by the husband and wife during the coverture rises to the dignity of coownership is a question of State law. *United States* v. *Davis, supra*. It is common knowledge that in most jurisdictions the financial arrangements that are concluded incidental to the termination of a viable marriage relationship arise from the husband's personal obligation to support his wife and not from the liquidation of any property interest of the latter. The major exception is to be found in community property States. In practice the ownership requirement announced in *Davis* is satisfied if the property interest in question is as large as the estate of a married person in his community property share. *George F. Collins, Jr.*, 46 T.C. 461, 475 (1966).[2]

The law of Kansas provides that a decree of divorce, separate maintenance, or annulment must be accompanied by an equitable division of property. Section 60–1610(b) of the Kansas Statutes states this requirement and it is the crucial authority cited to us by petitioner in support of his contention that in Kansas a married person is coowner with his spouse of the property jointly held during the marriage.[3]

---

[1] All statutory references are to the Internal Revenue Code of 1954 unless otherwise stated.

[2] The history of the *Collins* case is discussed below.

[3] Kan. Stat. Ann. sec. 60–1610(b) (Supp. 1971):

(b) *Division of property*. The decree shall divide the real and personal property of the parties, whether owned by either spouse prior to marriage, acquired by either spouse in his or her own right after marriage, or acquired by their joint efforts, in a just and reasonable manner, either by a division of the property in kind, or by setting the same or a part thereof over to one of the spouses and requiring either to pay such sum as may be just and proper, or by ordering a sale of the same under such conditions as the court may prescribe and dividing the proceeds of such sale.

While the division of property may be made, as here, by agreement, sec. 60–1610(d), Kan. Stat. Ann. (Supp. 1971), such an agreement is subject to judicial supervision for fairness and thus must achieve the objectives of section 60–1610(b), *supra*. In addition to a property settlement, the court may award alimony. Sec. 60–1610(c), Kan. Stat. Ann. (Supp. 1971).

To be sure there is a strong sentiment in the Kansas decision, which petitioner has amply explored on brief, that a divorced woman is entitled to something more than alimony. Indeed, the Kansas Supreme Court has analogized the marital relationship to a partnership, the termination of which is to be accompanied by a property division regardless of the fault of either party. *Garver* v. *Garver*, 184 Kan. 145, 334 P. 2d 408 (1959). In *Cummings* v. *Cummings*, 138 Kan. 359, 26 P. 2d 440 (1933), the same court stated that "a wife has an interest in property accumulated by husband and wife while the marriage relation existed." 26 P. 2d at 442. See also *Putnam* v. *Putnam*, 104 Kan. 47, 177 Pac. 838 (1919).

In spite of the foregoing, however, the question whether a wife's interest in the marital property is an ownership interest in the sense intended by *Davis* is still unanswered. In our opinion, section 60–1610(b), *supra*, does not resolve it. Rather, the purpose and effect of the statute is to preclude vexatious litigation between husband and wife over title to property in connection with the termination of a marriage. As the quoted language from *Cummings* suggests, in Kansas prior to 1964, when section 60–1610(b) was enacted, a spouse was entitled to a division only of property jointly acquired during the marriage. *Garver* v. *Garver*, *supra* at 411–412. The new law empowered the courts to throw all property owned by husband and wife, disregarding legal title, into a common pot and to divide the aggregate in a reasonable way. *Zeller* v. *Zeller*, 195 Kan. 452, 407 P. 2d 478, 484–485 (1965). Thus, petitioner's reliance on section 60–1610(b), *supra*, is misplaced; but we doubt that he could have made a better case. The statute itself clearly shows that whatever the nature of a spouse's interest in the marital property during the marriage, the value and extent of that interest cannot be ascertained until the marriage is terminated. For all we know, the determination of what is in the terms of the statute a just and reasonable division of property may depend on criteria such as the wife's age and health, her independent wealth and living style at the time of divorce. Notwithstanding section 60–1610(b), it is still the law in Kansas that a wife must survive her partner in order to share in his intestate estate. Secs. 59–504, 59–505, Kan. Stat. Ann. (1964). The foregoing considerations are the very same which led the U.S. Supreme Court in *Davis* to a conclusion adverse to the taxpayer. Absent a Kansas decision flatly stating that a property settlement in

Kansas is a division of property between *coowners*, we are unwilling to so hold today. We have been unable to find such a case.

Petitioner makes much of the decision of the Tenth Circuit Court of Appeals in *Collins* v. *Commissioner*, 412 F. 2d 211 (C.A. 10, 1969), in which the opposite conclusion was drawn about the Oklahoma statute corresponding to section 60–1610, *supra.*

However, since that decision, the Oklahoma Supreme Court has stated that:

A wife does not have joint ownership in jointly acquired property * * * for if she did that would return this jurisdiction to a community property state which was repealed by the legislature in 1949. [*Sanditen* v. *Sanditen*, 496 P. 2d 365, 367 (Okla. 1972).]

And see *McDaniel* v. *Oklahoma Tax Commission*, 499 P. 2d 1391 (Okla. 1972); *Wallace* v. *United States*, 309 F. Supp. 748 (S.D. Iowa 1970), affd. 439 F. 2d 757 (C.A. 8, 1971). Furthermore, we do not think that the Tenth Circuit's decision implies that its holding would be applied in a case involving Kansas law.

*Collins* was commenced in this Court, and in a reported decision we concluded that a property settlement under Oklahoma domestic relations law was an exchange giving rise to capital gain. *George F. Collins, Jr., supra* at 475. In the course of our opinion, we observed that the Oklahoma law was derived from Kansas law. 46 T.C. at 473. The latter was amended in 1964. The Tenth Circuit affirmed us, 388 F. 2d 353 (C.A. 10, 1968), in an opinion in which the applicable law of yet another State, Colorado, construed in *Pulliam* v. *Commissioner*, 329 F. 2d 97 (C.A. 10, 1964), certiorari denied 379 U.S. 836 (1964), was analogized to the law of Oklahoma. However, 10 months later the Oklahoma Supreme Court rendered an opinion, in the course of which the State court clearly established that under Oklahoma law the interest of a wife in property acquired by joint effort during marriage is "similar in conception to community property of community property states, and is regarded as held by a species of common ownership." *Collins* v. *Oklahoma Tax Commission*, 446 P. 2d 290, 295 (Okla. 1968). Collins petitioned the U.S. Supreme Court for a writ of certiorari in the Federal tax case; it was granted and the case was remanded to the Tenth Circuit for further consideration in light of the decision of the Oklahoma Supreme Court. 393 U.S. 215 (1968). On remand, the Tenth Circuit reversed its prior decision and stated at page 212 that:

Collins v. Oklahoma Tax Commission proclaims that in Oklahoma the wife is made "a part owner thereof," consequently there is no need to search state law for indications of other factors that might signify the nature of the wife's property interest.

The Commissioner observes on brief that *Collins* is the only case of this kind which he has lost where the law of a noncommunity property jurisdiction is involved.

Of course *Collins* v. *Oklahoma Tax Commission, supra,* did not settle a question of Kansas law. We doubt that it is even analogous, in view of the confinement of the Oklahoma statute to a treatment of jointly acquired property. By contrast, the new Kansas statute can operate to divest a spouse of his several property, and in fact nearly all the securities petitioner delivered on October 4, 1966, had been brought into the marriage by petitioner and were not jointly acquired property. Moreover, as we indicated above, absent a Kansas decision speaking as clearly as *Collins* v. *Oklahoma Tax Commission, supra,* did, in regard to the Oklahoma law, we are compelled to engage in a process of characterization that is necessitated whenever a State law designed to achieve a local objective is pressed into the service of the Federal tax law.[4] We have reexamined the position this Court took in *George F. Collins, Jr.,* 46 T.C. 461, affd. 388 F. 2d 353 (C.A. 10, 1969), and believe the reasoning therein expressed is correct.

We turn next to the valuation issue.

There is no dispute as to petitioner's basis in the transferred stock. The parties disagree as to the amount realized. Petitioner contends that such amount should be derived from the average of the market high and low for each stock on the date of petitioner's performance of his part of the agreement, October 4, 1966. The Commissioner contends that the relevant valuation date is May 27, 1966, the date of the stipulation and agreement of property settlement.

Further, the Commissioner contends in the alternative that the agreed-upon values for the stocks in the agreement should be used to compute the aggregate amount realized. In support of his latter contention, the Commissioner observes that those values were arrived at by arm's-length negotiations, which is undoubtedly true. However, all the stocks involved are publicly traded, and we cannot subscribe to the suggestion that petitioner and Constance could have valued those stocks more accurately than the highly organized markets in which they are traded daily. Indeed cases cited by the Commissioner state that the fair market value of a publicly traded stock is the average of the market high and low upon transfer. *Leon R. Meyer,* 46 T.C. 65, 106 (1966), affirmed on this point 383 F. 2d 883 (C.A. 8, 1967); *Batterman* v. *Commissioner,* 142 F. 2d 448 (C.A. 6, 1944), affirming a Memorandum Opinion of this Court.

It remains for us to determine whether the appropriate valuation date is October 4, 1966, or May 27, 1966. The Commissioner claims that Constance became the equitable owner of the shares earmarked

---

[4] If such a Kansas decision existed, we might be compelled to hold on this issue for the petitioners under *Collins* v. *Commissioner,* 412 F. 2d 211 (C.A. 10, 1969), and *Jack E. Golsen,* 54 T.C. 742 (1970), affd. 445 F. 2d 985 (C.A. 10, 1971). However, in cases which are appealable to other circuits, this Court will not necessarily be bound by the mere "tags" of State law to determine whether coownership between husband and wife existed. *United States* v. *Davis,* 370 U.S. at 70.

for transfer to her as of the date of the agreement; he cites the fact that she bore the risk of depreciation in value of any of the stocks during the period between the signing of the agreement and the delivery date. We note that the agreement further provided that Constance was entitled to all dividends of every kind declared after May 27, 1966, on the shares finally delivered to her. The purpose of the substantial waiting period before the delivery was only to permit petitioner to obtain the release of some of the stock which was at that time pledged to secure an indebtedness of petitioner. While we recognize that petitioner also enjoyed some of the benefits and assumed some of the burdens of ownership during the predelivery period, nevertheless we think that the intent of the agreement was that Constance was to be the owner of the securities on May 27, 1966. Under authorities such as *I. C. Bradbury*, 23 B.T.A. 1352 (1931), affd. 78 F. 2d 599 (C.A. 6, 1935); *Commissioner* v. *C.A. Sporl & Co.*, 118 F. 2d 283 (C.A. 5, 1941), affirming 40 B.T.A. 829 (1939); and *W. F. Marsh*, 12 T.C. 1083 (1949), we decide this issue in the Commissioner's favor.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

GOFFE, *J.*, dissenting: I respectfully dissent from the opinion of the majority.

The result in the instant case is dictated by the application of the rationale of the Supreme Court in *United States* v. *Davis*, 370 U.S. 65 (1962). If the transfer from petitioner to his former wife pursuant to the property settlement agreement was in satisfaction of the termination of the marriage contract with its accompanying legal duty of support, the transfer is a taxable event. If, instead, the transfer is for the purpose of conveying title to property to the name of the former wife in recognition of her property interest in property standing in petitioner's name, the transfer is a nontaxable division of property. Such determination is based upon the law of the State under which the divorce is granted. *United States* v. *Davis, supra; George F. Collins, Jr.*, 46 T.C. 461 (1966); *Collins* v. *Commissioner*, 388 F. 2d 353 (C.A. 10, 1968); *Collins* v. *Commissioner*, 412 F. 2d 211 (C.A. 10, 1969).

The *Davis* case involved a divorce granted under Delaware law and the Supreme Court looked in vain for a property interest in the wife which was being recognized by the transfer of property by the husband.

The U.S. Court of Appeals for the Tenth Circuit, to which an appeal in the instant case would be made, endeavored to make the

same inquiry in *Collins* v. *Commissioner, supra,* when the Commissioner appealed the decision of this Court. It found no such property interest in the wife after its examination of the Oklahoma statutes and case law. Following the decision of the Supreme Court of Oklahoma in *Collins* v. *Oklahoma Tax Commission,* 446 P. 2d 290 (Okla. 1968), the Court of Appeals reexamined the Oklahoma law and found that the wife did possess a property interest under State law and the transfer provided in the property settlement agreement constituted a nontaxable division of property. As the Court of Appeals stated (412 F. 2d at 212) :

It is contended that when the Court in Davis discussed such factors as right of control, descendable interest, and the like, federal criteria were established that must be met before the rights conferred by state law can be said to constitute co-ownership. The language of Davis will not support that interpretation. The Court merely discussed certain general characteristics of co-ownership in an attempt to determine whether the wife possessed the rights of a co-owner under state law. In so doing, the Court determined that "regardless of the tags, Delaware seems only to place a burden on the husband's property rather than to make the wife a part owner thereof." 370 U.S. at 70, 82 S. Ct. at 1193. Collins v. Oklahoma Tax Commission proclaims that in Oklahoma the wife is made "a part owner thereof," consequently, there is no need to search state law for indications of other factors that might·signify the nature of the wife's property interest.

In sum, we look to the law of the state, as the Supreme Court did in Davis and as this court did in Pulliam v. C. I. R., 329 F. 2d 97 (1964), and conclude that the transfer of stock was a nontaxable division of property between co-owners.

In my view the majority applies an erroneous interpretation of *Davis* which was specifically rejected by the Court of Appeals as set forth above.

The application of State law involves a concept known as jointly acquired property. Briefly the concept may be described as a property right created by divorce statutes in both spouses to property or the enhancement in the value of property brought about by the joint industry of the husband and wife during their marriage. If property is found to be jointly acquired property, it is immaterial in whose name any of the property is held at the time it is divided by the divorce court. In granting a divorce the jointly-acquired-property concept requires the court to recognize three classes of property which must be divided: His property, her property, and their property, regardless of title. Only three States have statutes providing for the division of jointly acquired property upon divorce—Oklahoma, Kansas, and Minnesota.

The instant case involves the transfer of corporate stocks from petitioner to his former wife in recognition of her interest in jointly

acquired property under Kansas law. Petitioner and his former wife agreed in their property settlement agreement that they would divide the total of all the property in half in recognition of their respective jointly held property interests, regardless of title. This being the fact and not subject to dispute because the instant case was fully stipulated, the opinion of the majority at page 63 of its opinion confuses title with the concept of jointly acquired property. A division of property must necessarily involve the transfer of title from one spouse to another. This is even true in the division of property pursuant to a divorce in a community property State.

I believe further that the majority has misinterpreted Kansas law. The Oklahoma statute which the Court of Appeals interpreted in *Collins* had its origin in Kansas and the statutes of both States were identical until 1964. The landmark case of the Supreme Court of Kansas describing the concept of the wife's property interest in a divorce proceeding is *Putnam* v. *Putnam*, 104 Kan. 47, 177 Pac. 838 (1919). In that case the husband attempted to convince the court in a divorce action that the wife had no property interest in property acquired by joint industry during coverture to which the Supreme Court replied (177 Pac. at. 840):

> But a wife has certain rights and interests in property acquired by the husband during the existence of the marriage relation which, with the aid of the statute, the courts upon proper occasion will recognize and protect. Without such statute these rights of the wife would be imperfect and unenforceable, but they would morally exist nevertheless, and they only need such statute to give them legal vitality. * * *

> * * * In pioneer times the family usually commenced life with little or no property. Land was cheap and easily acquired. The combined efforts and economies of the husband and wife for a long stretch of years usually resulted in prosperity, in the accumulation of the familiar forms of Kansas property. During the years of mutual industry, self-denial, and domestic harmony of the married couple, it would not ordinarily be important whether each succeeding tract of land or other property acquired by their joint efforts was taken in the name of the husband or wife. If they lived together happily both would enjoy the property, and upon the death of one of them, the other's half interest would completely mature, and the statute of wills and of descents and distributions would protect it. If their marital partnership—for the joint accumulations of property by a husband and wife are slightly analogous to that of a partnership— is wrecked by marital discord and their troubles become the concern of a divorce court, the court may equitably divide the property accumulated during the marriage relation. * * *

The Supreme Court of Kansas has continued to recognize the concept of the wife's interest in jointly acquired property and has set her property apart to her in a divorce action even though it refused to grant a divorce. *Perkins* v. *Perkins*, 154 Kan. 73, 114 P. 2d 804 (1941); *Zeller* v. *Zeller*, 195 Kan. 452, 407 P. 2d 478 (1965).

The concept of jointly acquired property is deeply imbedded in the divorce law of Kansas and is probably best described in the more recent opinion of the Supreme Court of Kansas in *Garver* v. *Garver*, 184 Kan. 145, 334 P. 2d 408 (1959). The following quotations from that opinion most aptly describe the nature of such property interest:

We are of the opinion that alimony and property division are completely separate and that a wife who prevails in a divorce action is entitled to both alimony and division of property. The right to alimony is separate and distinct from the right to division of property jointly acquired by the parties during the marriage. The doctrine of alimony is based upon the common law obligation of the husband to support his wife, which obligation is not removed by her obtaining a divorce for his misconduct. Division of property, on the other hand, has for its basis the wife's right to a just and equitable share of that property which has been accumulated by the parties as a result of their joint efforts during the years of the marriage to serve their mutual needs. In this sense, the marital relationship is somewhat analogous to a partnership, and when the relationship is dissolved the jointly acquired property must be divided, regardless of which party has been at fault. (Putnam v. Putnam, 104 Kan. 47, 177 P. 838). The distinction between alimony and property division has long been recognized in this jurisdiction. * * * [p. 410]

In Cummings v. Cummings, 138 Kan. 359, 361, 362, 26 P. 2d 440, 442, the court said:

"The law of this state recognizes that a wife has an interest in property accumulated by husband and wife while the marriage relation existed. The interest is distinct from alimony. Hardesty v. Hardesty, 115 Kan. 192, 222 P. 102; Hendricks v. Hendricks, 136 Kan. 69, 12 P. (2d) 804. Alimony has for its basis right to maintenance only. Division of property has for its basis right to a just and equitable share of property. Bowers v. Bowers, 70 Kan. 164, 167, 78 P. 430." [p. 411]

\* \* \* \* \* \* \*

It is clear to us that when a divorce is granted the wife for the fault of the husband she is entitled to three things: (1) restoration of *all* the property owned by her prior to the marriage or acquired by her in her own right after the marriage, (2) such alimony as the court shall deem reasonable, and (3) a division of the property acquired jointly by the parties during the marriage. While the mentioned statute is not a model of clarity, it is apparent the legislature intended that the sentence dealing with division of jointly acquired property apply both to cases where the divorce is granted the wife for the fault of the husband and to cases where the husband is granted the divorce for the fault of the wife. A contrary conclusion would put a premium on the misconduct of the wife. It would mean that property acquired as a result of the joint efforts of the partners in marriage would be retained by the husband where his misconduct resulted in a divorce, while the property would be equitably divided between the parties where the wife's misconduct led to divorce. Such a conclusion cannot be justified in theory or in reason. * * * [pp. 411–412.]

I conclude, therefore, that Kansas statutory and case law as it existed in 1963 was no different from the Oklahoma law which compelled the Court of Appeals to hold the division of jointly acquired property to be nontaxable. *Collins* v. *Commissioner*, 412 F. 2d 211 (C.A. 10, 1969).

In 1963 Kansas amended its civil code which included a change in its section on division of property in a divorce proceeding. The divorce court is no longer required to set aside the wife's separate property to her but now such property is subject to division by the court as is the jointly acquired property. This change which became effective on January 1, 1964, is embodied in Kan. Stat. Ann. sec. 60–1610(b) (Supp. 1971), and is reproduced in full at page 60 of the majority opinion. The code, as amended, applies to the instant case.

In my view, the change in Kansas law does not affect the property concept of jointly acquired property which existed before the amendment.

The similarity of the Oklahoma law and the Kansas law was recognized when the Court of Appeals first decided *Collins* v. *Commissioner*, 388 F. 2d 353 (C.A. 10, 1968). See Huff, "Federal Income Tax—Divorce Property Division as Taxable Disposition," 37 J.B. Assn. Kan. 45.

The Supreme Court of Kansas, in comparing the former statute (which was identical to that of Oklahoma) and the statute as revised in 1964 stated:

The significant change in the law regarding division of property is that the court is no longer required to set aside to the wife the separate property which she brought to the marriage or acquired with her own funds after the marriage. The court now is given authority to divide all of the property owned by the parties, regardless of the source or manner in which acquired, in a just and reasonable manner.

*Zeller* v. *Zeller, supra* at 484.

The amendment to the statute was for the purpose of enlarging the trial court's power to divide the property of the spouses. *Harrah* v. *Harrah*, 196 Kan. 142, 409 P. 2d 1007 (1966). I conclude, therefore, that under Kansas law when the petitioner transferred the stocks to his former wife, it was a division of their jointly acquired property and was, therefore, nontaxable.

Because I would hold the transfer to be nontaxable it is not necessary to comment upon the valuation issue.

FAY and FEATHERSTON, *JJ.*, agree with this dissent.